STATE v. STANLEY W. HUBER.

148 N. W. (2d) 137.

January 13, 1967—No. 39,648.

[6] See, for example, Vail v. Inhabitants of City of Plainfield, 9 N. J. Misc. 817, 155 A. 679; Riedman v. Brison, 217 Cal. 383, 18 P. (2d) 947.

476

*Harvey E. Skaar,* for appellant.

*Robert W. Mattson,* Attorney General, *Gerard Snell,* Solicitor General, *William B. Randall,* County Attorney, and *Bertrand Poritsky,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction growing out of a prosecution by which the defendant was found guilty of having uttered a forged check in violation of Minn. St. 609.625, subd. 3. It is contended here (1) that the trial court erred by imposition of excessive bail which deprived defendant of his liberty; (2) that the court erred in denying a continuance so that the defendant could secure private counsel; and (3) that other errors occurred during the trial.

From the record it appears that defendant, Stanley W. Huber, was employed for a period ending June 1, 1963, by Mel Olson Mobile Homes, Inc. In this employment defendant became familiar with the banking practices of that company. Its offices were burglarized during the night of December 5, 1963, and a corporation checkbook was taken. On December 7, 1963, one of the stolen checks was forged in the name of one James Carey and passed at an Applebaum food store in St. Paul. Defendant was identified by two witnesses as the person who cashed the check. In cashing the check, he presented for identification a chauffeur's license issued to James Carey. Another witness observed defendant leaving the Applebaum premises in an automobile occupied by two other men and identified him at the trial. Later these two men were apprehended in the vicinity of the Applebaum store and, under the floor mat in the rear seat of the automobile which they occupied, a number of blank Mel Olson Mobile Homes, Inc., checks were found. It subsequently developed that on December 6 James Carey was in the presence of the two occupants of this automobile at a tavern and later found that his wallet containing the chauffeur's license had disappeared. The evidence further establishes that during the afternoon of December 7, 1963, a man resembling defendant cashed forged Olson checks at the Spartan Department Store and the Snyder Drug Store in the village of Roseville.

Defendant was apprehended on December 11, 1963, and on appearance before a magistrate his bail was fixed at $25,000. Later he was arraigned in district court, at which time his bail was reduced to $5,000. On January 13, 1964, he entered a plea of not guilty, after which his case was continued on a week-to-week basis until his trial was held on March 24, 1964. At the time of his arraignment, he was tendered the services of the then public defender, Thomas Moore. The record would indicate that he did not have confidence in this attorney because he had represented one of the other men involved in the alleged offense. Thereafter, public defender Robert P. Tolaas was appointed to defend him, and when he became involved in the trial of a case which had previously been assigned to him, the assistant public defender, Roger R. Lenzmeier, was appointed to represent him. When the time came for trial, defendant determined that he did not wish to have the services of the public defender.

He signed and filed a waiver of counsel and proceeded to conduct his own defense.[1] Defendant was found guilty and sentenced to the custody of the commissioner of corrections for an indeterminate sentence.

■ Defendant's first contention that the court erred in fixing excessive bail may be disposed of by stating that in the absence of extraordinary circumstances, which do not appear here, questions concerning the amount of defendant's pretrial bail are moot after conviction. State v. Castle, 260 Minn. 293, 109 N. W. (2d) 593, certiorari denied, 368 U. S. 978, 82 S. Ct. 481, 7 L. ed. (2d) 439. The amount of bail to be fixed in a particular case rests within the discretion of the trial court and its determination will not be reversed unless there is a clear abuse of that discretion. Since we cannot say on the basis of the record that the bail was excessive nor that the refusal to reduce it so prejudiced defendant that he was unable to obtain a fair trial, we must conclude that this assignment of error is without merit.

■ It is next contended that the trial court erred in denying defendant a 30-day continuance so that he could obtain private counsel for his defense. It should be noted at the outset that this request was made 3 months after defendant had been taken into custody. There is no showing or representation that during that period he was denied communication with friends, relatives, or counsel, nor is it suggested that there was any interference with any attempt he may have wished to make to secure private counsel. The record indicates that on March 16, 1964, he appeared in district court with public defender Tolaas, at which time the case was set for March 23. On the former date defendant informed

---

[1] The following waiver was signed by defendant: "I, the undersigned, having been advised by the Court that I have the Constitutional right to be represented by counsel, and having been tendered the services of Thomas Moore, former public defender for the county of Ramsey, the services of Robert E. Tolaas currently the public defender for Ramsey County, and the services of Roger Lenzmeier, currently assistant public defender for Ramsey county, and having indicated to the Court that I do not desire the services of either and that I wish to act as my own counsel in the trial of this case, I now formally, and in the presence of Mr. Lenzmeier and in the presence of the Court, do hereby and herewith waive my right under the Constitution to be represented by counsel."

the court that he wished to have his bail reduced so that he might attempt to secure the services of private counsel. The court advised defendant:

"* * * [Y]ou have had plenty of time to work on it, * * * and I think you will agree that the Court won't permit a delay at this late date to get private counsel * * *."

Defendant made some general representation that there might be "somebody that's going to bat for me on it" and that he was not seeking an intentional delay. He explained that he would prefer private counsel, not because he questioned the public defender's ability but "due to the fact of the overload of their cases." On March 23, defendant again appeared in court and was represented by Roger Lenzmeier, the assistant public defender. A request for a 30-day continuance was made by defendant at that time and, again, he made some vague reference to the possibility of securing financing to employ private counsel. The trial court, however, set the case for trial the following day. The following colloquy took place:

"THE COURT: Well, Mr. Huber, let's assume I order this thing out for trial tomorrow. Would you be willing to go to trial tomorrow on this situation?

"THE DEFENDANT: Yes, sir. I'm ready to go to trial right now, but, like several of the judges since I have been picked up — I have been before five judges, and every one of them have told me that I am not forced to have the Public Defender, now, and I made it —

"THE COURT: That is right. There is no question about it. You can get your own lawyer.          *    *    *    *    *

"THE DEFENDANT: — and the reason is not that I doubt the man's ability — and I said this in court all the time — but I feel under the circumstances these men are too busy, that they can't give my case the time that it needs.

"THE COURT: You want to waive a lawyer then or —

"THE DEFENDANT: I have offered to waive a lawyer."

Defendant again said:

"THE DEFENDANT: Well, then, will you consider this: will you give me long enough to get an attorney?

"THE COURT: How long have you been in custody, Mr. Huber?

\* \* \* \* \*

"The Defendant: Since December 11th."

The court then said, "Well, I see no reason why Mr. Huber shouldn't be granted his wish for immediate trial." The case was accordingly set for trial the next morning at 9:30 a. m. Defendant then said, "Your Honor, please don't take this as being smart, but is this the order of the Court then, that I'm being ordered to accept the Public Defender as my defense?" The court answered, "No. You don't have to have a lawyer, it is up to you. For your own protection, what the Court is doing — and I am being consistent with the other judges — there is going to be a lawyer available for you. You can take his services or discard them, as you see fit. However, he is going to be there whether you like it or not." Defendant told the court there were several witnesses he wished to have in court and was told to check with his attorney on that matter.

When the case came for trial the next morning, the court advised defendant:

"I'm sure that [the public defenders] have advised you that under the Constitution of the United States and of the State of Minnesota, you have the absolute right to be represented by counsel and the fact that you may not have any money or any funds with which to employ counsel does not deprive you of that right, and that the three gentlemen mentioned [the public defenders], their services have been tendered to you without any cost to yourself. You understand that?

"Mr. Huber: Yes, sir.

"The Court: And despite all this you feel that you could do better trying the case without counsel. Is that the idea?

"Mr. Huber: \* \* \* [I]t isn't I doubt the ability of any one of the three men, but I feel that under the circumstances with the overload I don't feel they have the time they can give me for the defense that I feel I would like to have, and with permission of the Court I'd like to waive all three of them if it's permissible, sir."

We cannot say that the trial court abused its discretion in denying an additional continuance of 30 days to give the benefit of an opportunity to secure private counsel. Defendant had been in custody for more than 3

months before the case was called to trial. There is no showing that during the time he was in custody means of communication by telephone, mail, or messenger were denied to him. At that stage of the proceeding we do not think it was an abuse of the court's discretion to set the case for trial and to deny a continuance on the bald assertion of defendant that there might be some possibility that he could secure private counsel within that time. The general rule in cases where a convicted defendant urges that a new trial be ordered because the court refused to grant a continuance is that the matter is within the discretion of the trial court, and an appellate court will reverse only for a clear abuse of that discretion. 5A Dunnell, Dig. (3 ed.) § 2470; State v. Fay, 88 Minn. 269, 92 N. W. 978. In State v. Bell, 275 Minn. 541, 543, 146 N. W. (2d) 597, 599, we stated that "continuances in criminal as well as in civil cases are commonly within the discretion of the trial court, subject to review only for an abuse of discretion." The test for determining whether the denial of a continuance was prejudicial as a violation of the defendant's constitutional rights so as to amount to a denial of due process requiring reversal of conviction is whether the defendant has been in some manner embarrassed or prejudiced in preparing his defense so as to materially affect the outcome of the trial. People v. Chessman, 52 Cal. (2d) 467, 341 P. (2d) 679; People v. Solomon, 24 Ill. (2d) 586, 182 N. E. (2d) 736.

An examination of the record would indicate that defendant's request for a continuance was not seriously made. At one point he told the court, "* * * and I feel that it's within my rights to be tried today. The Court decided last week that this was the last continuance, that I was stalling, and I feel that under the — after the Court's decision, that I am entitled to be tried today." Later, at the same hearing, he said, "Yes, sir. I'm ready to go to trial right now * * *."

■ Defendant further makes numerous assertions that both the court and the prosecuting attorney were guilty of misconduct during the trial. Although none of the asserted errors was properly raised or acted upon below or properly saved for review and made part of the record, we have nevertheless carefully examined the claims of defendant in the context of the transcripts with which we have been supplied. In view of the

fact that defendant acted as his own attorney, it is not surprising that certain irregularities occurred. The defense was not presented with the competence that a lawyer would employ, but defendant undertook the trial of his own case with knowledge of the fact that these handicaps would be inherent in the procedure which he voluntarily followed. While a defendant has a constitutional right to counsel, he also has a constitutional right to conduct his defense in person without assistance of counsel. And where he elects to do so with full knowledge and understanding of the risks involved, he should not expect to have a new trial because of irregularities which grew out of the manner in which he decided to conduct his defense. It is unnecessary to set out in this opinion the repeated occasions when the trial court not only advised but urged defendant to accept the assistance of counsel. A fair reading of the record leads to the conclusion that on the whole both the trial court and the prosecuting attorney acted with fairness and restraint. The witnesses which defendant wished to call were made available by subpoena, and the court relaxed the rules of evidence. The court was liberal and fair and dispensed with technical procedural rules so that defendant had every opportunity to bring to the attention of the jury evidence which he thought would be helpful to him. We do not find from the record that any fundamental rights of defendant were denied.

Affirmed.

Mr. Justice Peterson, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.