STATE of Minnesota, Respondent,

v.

Debra M. CHAMBLEE, Appellant.

No. C3-87-131.

Court of Appeals of Minnesota.

June 16, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan C. Mitchell, St. Louis Co. Atty.,

Brian D. Simonson, Asst. Co. Atty., Hibbing, for respondent.

Fred T. Friedman, Duluth, for appellant.

Considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Debra Chamblee appeals from denial of her motion for bail reduction or supervised release.

## FACTS

Chamblee and co-defendants Michael Alan Merrill and Kenneth Kevin Richard Robinson were indicted by a grand jury on three counts of murder in the first degree, all involving the death of Clifford Charles Enroth.

On July 16, 1986, Chamblee met Merrill, a recent parolee, in Oregon. Six days later, they drove to Hibbing, Minnesota, with two escapees from the Oregon State Prison, Robinson and Hutchinson. In Hibbing, the four of them rented an apartment.

On August 5, 1986, Chamblee, Merrill and Robinson went to a bar in Hibbing where they met Enroth for the first time. Enroth, a paraplegic, invited them to his home where all four of them took a sauna. Shortly thereafter, Merrill and Robinson passed out on the couch.

Chamblee explained to Enroth that Merrill physically abused her and that she did not know how to get away from him. Enroth arranged an appointment for Chamblee at a battered women's shelter and told Chamblee he would escort her to the shelter later that morning. Enroth and Chamblee engaged in consensual sex. Since Enroth was unable to get an erection, Chamblee agreed that he could use a dildo on her.

Chamblee then woke Merrill and Robinson and all three left Enroth's home.

Along the way back to their apartment, Merrill struck Chamblee and demanded to know if she and Enroth had sex. In order to get Merrill to stop beating her, Chamblee told Merrill that Enroth had raped her at gunpoint with a dildo. Merrill said that he was going to kill Enroth and drove back to Enroth's home.

Merrill and Robinson reentered Enroth's home and accused him of raping Chamblee. Merrill struck Enroth, kicked him and dumped him out of his wheelchair. Enroth began bleeding from a cut over his eye. Enroth denied raping Chamblee, so Merrill instructed Chamblee to come inside. Instead of admitting that Enroth had not raped her, Chamblee began slapping Enroth. Merrill then went into Enroth's bedroom and picked up various items to steal. When Merrill came out of the bedroom, he instructed Chamblee, who was still slapping and hitting Enroth with closed fists and screaming profanities at him, to go back outside to the car. Within seconds, Chamblee heard the wheelchair fall over and Enroth scream, "Don't do this to me." Thirty to forty minutes later, after stabbing Enroth and stealing his belongings, Merrill and Robinson returned to the car. Both Merrill and Robinson stated that Chamblee was not told of Enroth's murder and that the matter was not discussed on the way back to their apartment.

Chamblee, Merrill and Robinson drove from Hibbing, Minnesota, to Spokane, Washington, selling items stolen from Enroth. In Spokane, Chamblee stayed with Merrill and Robinson for 10 to 12 days before she "escaped" and returned to her boyfriend's home in Crescent, Oregon, where she reported the murder to the Oregon police. Merrill and Robinson were arrested and Chamblee gave authorities four statements. When giving her first statement, Chamblee left out the portions of the crime which indicated her own involvement.

Currently, Chamblee is incarcerated in the St. Louis County jail in Duluth, Minnesota. A date has not yet been set for Chamblee's trial.

## ISSUE

Did the trial court abuse its discretion in setting bail at $150,000 and in denying appellant's motion for reduction or supervised release?

## ANALYSIS

▮ The trial court has the discretion to set bail in an amount which will insure the defendant's presence at trial. *United States v. Archie*, 656 F.2d 1253, 1258 (8th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982). The trial court's determination will not be reversed unless there is a clear abuse of discretion. *State v. Huber*, 275 Minn. 475, 478, 148 N.W.2d 137, 140 (1967).

▮ Minn.R.Crim.P. 6.02 directs the court to consider several factors when determining the amount of bail required to reasonably assure defendant's presence at trial. Minn.R.Crim.P. 6.02, subd. 2 provides:

**Determining Factors.** In determining which conditions of release will reasonably assure such appearance, the judge, judicial officer or court shall on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, his record of appearance at court proceedings or flight to avoid prosecution, and the safety of any other person or of the community.

The record shows that the trial court considered each Minn.R.Crim.P. 6.02 factor in detail. Therefore, Chamblee's allegation that the trial court ignored Minn.R.Crim.P. 6.02 is without merit.

Chamblee argues that she is not a threat to the public safety and that $150,000 is far in excess of what is required to insure her appearance at trial. As support, appellant

cites *State v. Rogers,* 392 N.W.2d 11 (Minn. Ct.App.1986). However, the *Rogers* court was concerned with the "mechanical policy" of the court requiring bail or release on the personal recognizance of defense counsel because such a policy "does not reflect the careful appraisal of the variable individual components relevant to the decision on pre-trial release." *Id.* at 14. As noted above, the record shows that the trial court did consider the "variable individual components" before setting Chamblee's bail.

The Rules of Criminal Procedure reflect that pretrial release decisions must be done on a case-by-case basis and presume release on personal recognizance. *Id.* However, the "presumption may be overcome by a finding that there is substantial risk of non-appearance, or a need for additional conditions." *Id.* at 13 (quoting ABA Standards for Criminal Justice § 10–5.1(a) (1985)).

In finding a substantial risk of nonappearance, and the additional concerns that Chamblee was indicted for first degree murder, has questionable reliability, and left her three children in Oregon, the trial court's decision to set bail at $150,000 was not an abuse of discretion.

The trial court also considered the possibility of alternative placement, but decided it was not a viable option.

In setting bail at $150,000, the amount suggested by the probation office in its original and supplemental bail bond/supervised release study, the trial court cannot be said to have abused its discretion.

### DECISION

The trial court properly set bail at $150,000.

Affirmed.