*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0397**

State of Minnesota,
Respondent,

vs.

Gerald Exom,
Appellant.

**Filed February 13, 2017
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-15-4314

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

The state charged Gerald Exom with criminal sexual conduct for repeatedly molesting his stepdaughter. On the brink of trial, Exom unsuccessfully sought a

continuance to hire private counsel, and the district court ruled preliminarily that the state could offer evidence of Exom's alleged prior sexual misconduct with his niece. The parties proceeded under a stipulated-facts trial, after which the district court found Exom guilty. Exom argues on appeal that the district court should have granted his continuance motion and should have excluded the state's relationship evidence. Because Exom did not provide a compelling reason to delay trial, and because the district court's evidentiary ruling was properly within its discretion, we affirm.

**FACTS**

Sixteen-year-old E.M. reported in January 2015 that her stepfather, Gerald Exom, sexually abused her once or twice a month from August 2013 to August 2014 while her mother R.E. worked overnight shifts as a nurse. E.M. reported that Exom had touched her breasts and buttocks under her clothing and that he had digitally penetrated her vagina.

Before the report, R.E., who was unaware of the sex acts, had noticed a series of sexually suggestive computer messages between Exom and E.M. Exom had written to E.M. that he wanted to "explore some things" with her but that they should wait until R.E. was at work. He asked her to be his Valentine and told her to delete his messages so R.E. would not see them. When R.E. confronted Exom about the messages, he denied that any misconduct had occurred but admitted that he had "temptations."

R.E. confronted Exom about E.M.'s revelation that he had been sexually abusing her. Exom said that he had never touched E.M. and claimed that she had fabricated her allegations. He also implied that the allegations were false because "things like that" would have escalated beyond touching.

2

The state charged Exom with first-degree and third-degree criminal sexual conduct. On the morning of jury selection four months after his first appearance, Exom asked the district court to continue the trial so he could find a private attorney to replace his appointed attorney. The district court confirmed with Exom's attorney that she was in fact prepared to try the case. Exom explained that he was "not sure [his appointed counsel was] prepared to put on the best defense" for him. The district court ruled that Exom had not provided a sufficient reason to delay the trial and denied the request. It stated that it knew Exom's attorney to be a qualified and excellent attorney and indicated that the jury panel and the state's witnesses were also ready to proceed with jury selection and trial.

Exom moved the district court to preclude the state's evidence of his alleged past sexual misconduct with his minor niece, T.J. The district court rejected the motion, reasoning that the relationship evidence was more probative than prejudicial. It also pledged to read a cautionary instruction before and after admitting the challenged evidence.

The parties agreed to proceed with a stipulated-facts bench trial under Minnesota Rule of Criminal Procedure 26.01, subdivision 3, on an amended count of second-degree criminal sexual conduct. Exom waived his trial rights and confirmed that the decision to agree to a stipulated-facts trial was his own, not his attorney's. The district court found Exom guilty based on the stipulated evidence. It did not suggest in its findings that it relied on T.J.'s allegations against Exom. Before sentencing, Exom wrote to the district court complaining that he felt forced into the stipulated-facts trial because of the relationship-evidence ruling. The district court reiterated that Exom had validly waived his trial rights. It sentenced him to 94 months in prison. He appeals.

3

# DECISION

## I

Exom argues that the district court's denying his request for a continuance to hire a different attorney on the day of trial violated his right to counsel. The United States and the Minnesota Constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. But this is not an "unbridled" right to choose his representation, and he must generally accept the court's appointed counsel. *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970). It also does not confer a right to a "meaningful relationship" with appointed counsel. *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S. Ct. 1610, 1617 (1983). It does afford a defendant a fair opportunity to secure counsel of his own choice. *Fagerstrom*, 286 Minn. at 298, 176 N.W.2d at 264.

The decision whether to grant a motion to continue a trial falls within the district court's discretion. *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987). We will not reverse the decision to deny the motion unless the denial shows a clear abuse of discretion. *Id.* Exom argues that the district court failed "to exercise any discretion at all" because it did not inquire about his reasons for the motion. The record defeats the argument. The district court asked Exom directly for his reason.

And the reason that Exom gave—that he wanted to replace his appointed counsel because he doubted she was "prepared to put on the best defense"—is not sufficient to require the district court to grant the motion to continue. It has become axiomatic that "[a] defendant may not obtain a continuance by . . . arbitrarily choosing to substitute counsel at the time of trial." *Fagerstrom*, 286 Minn. at 299, 176 N.W.2d at 264. The supreme court

4

has repeatedly rejected claims that a district court abused its discretion for denying a motion to continue shortly before the start of trial. *See, e.g.*, *State v. Worthy*, 583 N.W.2d 270, 278 (Minn. 1998) (holding no abuse of discretion by denying a continuance requested a few days before trial by defendant who did not have good cause to dismiss his court-appointed attorney); *State v. Vance*, 254 N.W.2d 353, 359 (Minn. 1977) (affirming denial of continuance requested a few days before trial because public defender was competent); *State v. Ahearn*, 292 Minn. 449, 450, 194 N.W.2d 256, 256 (1972) (affirming denial of continuance requested the day before trial because there was no substantial basis for dissatisfaction or distrust with defendants' appointed counsel); *State v. Huber*, 275 Minn. 475, 480–81, 148 N.W.2d 137, 141–42 (1967) (affirming denial of continuance requested the day before trial because defendant gave no indication he was denied opportunity to find private counsel in the time leading up to trial). Exom did not express that he wanted a different attorney until shortly before jury selection was to begin, choosing not to bring a motion or seek other counsel during the months preceding the trial. The reason that Exom offered to support his motion would not warrant a continuance, let alone compel one.

The district court therefore did not abuse its discretion by finding Exom's reason insufficient to grant the continuance.

**II**

Exom asks us to reverse his conviction based on the district court's allegedly erroneous ruling that the state could introduce evidence of his reported prior sexual conduct with his niece, T.J. We also review evidentiary rulings for an abuse of discretion. *State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010). And we will reverse the conviction here

only if Exom establishes that the district court abused its discretion and that his defense was consequently prejudiced. *See State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Exom maintains that the district court improperly admitted the state's evidence of T.J.'s allegations as relationship evidence. We conclude otherwise.

"Relationship evidence" is shorthand for evidence of domestic conduct that is admissible under certain circumstances. A district court may admit evidence of "domestic conduct by the accused against the victim of domestic conduct, or against other family or household members . . . unless the probative value is substantially outweighed by the danger of unfair prejudice." Minn. Stat. § 634.20 (2014). Domestic abuse evidence is evidence of domestic conduct. *Id.* "Domestic abuse" includes criminal sexual conduct, and "family or household members" includes blood relatives. Minn. Stat. § 518B.01, subd. 2(a)(3), (b)(3) (2014). Evidence of domestic conduct by the accused against family or household members other than the victim may be admitted under section 634.20. *State v. Fraga*, 864 N.W.2d 615, 627 (Minn. 2015). "Evidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Barnslater*, 786 N.W.2d 646, 652 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. Oct. 27, 2010). And "evidence showing how a defendant treats his family or household members . . . sheds light on how the defendant interacts with those close to him, which in turn suggests how the defendant may interact with the victim." *State v. Valentine*, 787 N.W.2d 630, 637 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010).

Exom does not contend that T.J. was not a family or household member at the time of the alleged abuse. Nor does he (or could he) dispute that the alleged sexual misconduct qualifies as domestic conduct under section 634.20. He contends instead that the probative value of T.J.'s allegations is substantially outweighed by their risk of unfair prejudice to his defense. The evidence has probative value under *Valentine* because it reveals how Exom interacted inappropriately with another young, female relative while she lived in his residence. This tends to show how he treats his young, female relatives, "which in turn suggests how the defendant may interact with the victim."

As to the balance of the probative value of this evidence against any prejudice, the district court should instruct the jury as to the limited use of relationship evidence. *Barnslater*, 786 N.W.2d at 653; *see also State v. Ware*, 856 N.W.2d 719, 729 (Minn. App. 2014) ("A district court's limiting instruction lessens the probability of undue weight being given by the jury to the evidence." (quotation omitted)). The district court followed that approach here, mitigating any prejudice by announcing that it had intended to give the jury cautionary instructions to limit its use of the evidence. Courts trust that juries follow the cautionary instructions the district court issues. *See Matthews*, 779 N.W.2d at 550. We understand that Exom's alleged prior sexual misconduct with his niece is prejudicial. And we can assume that the weighing of competing interests was close enough that not all district court judges would have chosen to admit the evidence. But on balance, we do not believe that the district court's decision to admit the relationship evidence was beyond its reasonable discretionary range.

**Affirmed.**