**STATE of Minnesota, Respondent,**

v.

**Phillip Charles VANCE, Appellant.**

**No. 46288.**

Supreme Court of Minnesota.

May 6, 1977.

7. See, also, Minn.St. 334.01, subd. 2: "A contract for the loan or forbearance of money, goods, or things in action, in the amount of $100,000 or more, shall be exempt from the provisions of this section and the interest for such an indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing. * * *" "[T]he provisions of this section," arguably the usury provisions of § 334.01, must not include the provision here in question for it is reiterated.

**356**

C. Paul Jones, Public Defender, Ronald L. Haskvitz, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, Chief Appellate Division, David W. Larson and Phebe S. Haugen, Asst. County Attys., and Lee Barry, Law Clerk, Minneapolis, for respondent.

Heard before TODD, YETKA, and STAHLER, JJ., and considered and decided by the court en banc.

THOMAS J. STAHLER, Justice.*

Defendant was convicted in the Hennepin County District Court of aggravated sodomy in violation of Minn.St. 609.293, subd. 2, and he appeals from the judgment entered. We affirm.

The complainant gave the following version of the incident. At approximately 7:25 p. m. on Monday, January 6, 1975, she was waiting for a bus at 25th Street and Hennepin Avenue in Minneapolis. She had planned to take the bus downtown where she worked as a waitress. Defendant offered her a ride, which she accepted because she was afraid she would be late for work. Defendant then drove to a relatively secluded area near 21st Street and Upton Avenue. He stopped the car and ordered the complainant into the back seat, threatening her with his fist. She complied, either due to fear or being pushed into the back seat. Defendant followed her into the back seat, unzipped his pants, and forced her to perform oral sodomy. After the act, defendant drove complainant downtown to her place of employment. At this time some conversation took place and complainant told defendant she had been raped previously and had an abortion.

When defendant dropped complainant off, she noted the license number of his car. She immediately reported the incident to two coworkers. The police were summoned and given an account of what had happened, including a description of defendant and the license number of his car. On the

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

basis of this information, defendant was arrested at about 10:50 that evening.

The following morning defendant was interviewed by police Lieutenant Dale Dowson. After receiving a *Miranda* warning, defendant admitted that he gave complainant a ride downtown but denied making any detour or engaging in any sexual conduct. At the conclusion of the interview defendant was asked to give a written statement, but he declined to do so. Evidence of defendant's refusal to give a written statement was later introduced at trial.

On March 26, the day before the *Rasmussen* hearing, defendant moved for a continuance on the ground that he wished to hire private counsel and his family was attempting to raise the money. The public defender assigned to defendant's case indicated that he was ready to proceed. The court denied the motion but indicated defendant could renew it after the *Rasmussen* hearing. Defendant renewed his motion on March 28, presenting a letter from his sister stating that: "If you could get more time, maybe we could help raise some money for an attorney, but it would take time." The court again denied defendant's request for a continuance.

At the *Rasmussen* hearing and at trial defendant expressed a desire to introduce evidence of complainant's statement that she had been raped previously and had an abortion. The trial court ruled this evidence inadmissible.

Trial began on March 31. At trial, the state introduced testimony of a similar offense by defendant for purposes of establishing a common scheme, plan, modus operandi, or intent, following notice pursuant to *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965). Defendant's sister-in-law testified that defendant had committed a similar offense upon her in September 1974. She did not report the incident to the police until after defendant's arrest on the instant charge, but her testimony was corroborated by two other witnesses who stated she had reported the incident to them. One of these witnesses, Susanne Sillerud, had been a member of the Hennepin County jury panel the week before the trial. Sillerud was a counsellor at the Neighborhood Involvement Program Rape Counselling Center. Before trial, both parties had listed her as a potential witness. During jury selection the jurors were asked by the court whether any of them knew Sillerud. Only one of the jurors responded affirmatively. After examination by defense counsel, the juror who indicated acquaintance was neither challenged for cause nor peremptorily, although the defense still had some unused peremptory challenges. There was no evidence that any juror made a false response on voir dire examination. Sillerud was later called as a witness for the state. On cross-examination she was asked whether she knew any of the jurors. She recognized seven of them although she knew only two by name. She was later extensively examined in chambers regarding any statements she may have made to the jurors. She revealed that she had talked with some people about her job. She also told the jurors that she expected to receive a subpoena, but did not otherwise discuss defendant's case. On the basis of the foregoing, defendant moved for a mistrial. The trial court denied the motion but gave a curative instruction to the jury in respect to witness Sillerud.

1. Defendant's first claim of error relates to the refusal to grant a mistrial. We start with the rule that the granting of a mistrial for jury bias is a matter within the trial judge's discretion. *State v. Thompson,* 273 Minn. 1, 139 N.W.2d 490, certiorari denied, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966); *Eichten v. Central Minn. Co-op. Power Assn.,* 224 Minn. 180, 28 N.W.2d 862 (1947). There are two facets to defendant's claim of prejudice. One is that the jury might be more inclined to believe Sillerud's testimony, and the other is that they might be more sympathetic to the prosecution generally. Defendant relies on *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), where the state's two major witnesses were deputy sheriffs who were also custodians of the jury during trial. The United States Supreme Court

held that even absent a showing of actual prejudice, the potential was so overwhelming as to deny defendant a fair trial. We think the facts of *Turner* are readily distinguishable from the instant case. Where in *Turner* the credibility of the deputies was critical, Sillerud's testimony related only to a collateral matter. In fact, the thrust of her testimony, that the similar-offense witness had reported being raped by defendant, was virtually undisputed. It is inconceivable that any juror could have believed otherwise, whether the juror knew Sillerud or not. Furthermore, the contact between Sillerud and the jurors does not approach that present in *Turner.* Sillerud's relationship with the jurors was so casual that she could only remember the names of two of them and she had no contact with them during the trial. Under the circumstances we believe the possibility of prejudice was so remote that the trial court was justified in denying the mistrial.

2. Defendant contends that he should have been able to question complainant about her statement that she had been raped previously. At the preliminary hearing complainant was asked whether she had "ever been a victim in a *sexual type of case,*" and responded in the negative. (Italics supplied.) She also stated at the same hearing that she had been raped previously and had told defendant this shortly after the alleged crime. Defendant claims this demonstrates contradictory testimony under oath and it therefore should have been admitted for purposes of impeachment.

■ In order to impeach a witness on grounds of prior inconsistent statements, there must be foundation that the statements are actually inconsistent. Whether in fact there was an inconsistency must be determined from the entire testimony in question and not from an isolated portion thereof. *O'Neill v. Minneapolis Street Railway Co.,* 213 Minn. 514, 7 N.W.2d 665 (1942). In cases where the inconsistency is ambiguous and vague, the trial court has discretion to weigh the matter and determine the possible prejudicial effect as against the beneficial effect such evidence

would have. The decision of the trial court will not be reversed unless it is clearly shown that the trial court abused its discretion. *State v. Haney,* 219 Minn. 518, 18 N.W.2d 315 (1945).

■ The fact that complainant had been raped previously and had an abortion is irrelevant and manifestly prejudicial. Moreover, we fail to see any contradiction in her former statements. It seems fairly obvious that she understood the question to ask whether she had been involved in a rape prosecution before. Defendant's claim of contradiction strikes us as only a ruse for admitting otherwise prejudicial and irrelevant testimony. Defendant also claims the statement was admissible to show a prior false accusation, but there is no foundation to the effect that the statement was false. The trial court therefore properly exercised its discretion in excluding the statement.

■ 3–6. Defendant also challenges the trial court's refusal to grant a continuance to permit defendant to secure private counsel. The U.S.Const. Amend. VI and Minn.Const. art. 1, § 6, provide a criminal defendant in this state the right to have the assistance of counsel for his defense. This right includes a fair opportunity to secure counsel of his choice. An indigent defendant has the right to be provided competent counsel in all criminal proceedings. However, the right of an indigent to have counsel does not give him the unbridled right to be represented by counsel of his choice. Although he may request a substitution of counsel, his request will be granted only if exceptional circumstances exist and the demand is timely and reasonably made. The granting of such a continuance is a matter within the trial judge's discretion, and his decision should be based on all facts and circumstances surrounding the request. *State v. Fagerstrom,* 286 Minn. 295, 176 N.W.2d 261 (1970). A defendant may not demand a continuance for the purpose of delay or obtain a continuance by arbitrarily choosing to substitute counsel at the time of trial. In determining whether the trial court was within its sound discretion in denying a motion for a continuance, this

court looks to whether the defendant was so prejudiced in preparing or presenting his defense as to materially affect the outcome of the trial. *State v. Huber,* 275 Minn. 475, 148 N.W.2d 137 (1967). In the *Huber* case, which is strikingly similar to the case at bar, defendant was denied a continuance. In the instant case, defendant was provided with a competent and able public defender who had thoroughly investigated the facts and was prepared for trial. He had had 11 weeks to obtain private counsel but did not move for a continuance until a few days before trial. He could not be certain of securing counsel and merely stated that someone would attempt to raise the money. Moreover, he had no cause to be dissatisfied with his assigned counsel. The only reasons he gave for desiring private counsel were his fear that due to the public defender's caseload the public defender would not be able to devote sufficient time and effort to defendant's case, and a minor disagreement as to whether a particular witness should be called. Defendant's assigned counsel had apparently advised defendant not to call this witness, but counsel indicated a willingness to do so should it be necessary. Under these circumstances it was not error to deny the motion for a continuance.

7. Defendant's final assignment of error relates to Lieutenant Dowson's testimony that at the conclusion of the interview with defendant on the day following the incident, defendant refused to give a written statement. In *State v. Roberts,* 296 Minn. 347, 208 N.W.2d 744 (1973), we held that although a defendant initially waives his right to remain silent under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he can at any time refuse to give further information and the state may not introduce evidence of such refusal. The state argues that the instant case does not involve a refusal to give information as defendant answered all questions propounded by Lieutenant Dowson. It claims the refusal to give a written statement merely relates to the circumstances of the statement defendant did make and that the fact of a refusal was introduced to preclude speculation that

Lieutenant Dowson's account may have been fabricated. Inasmuch as defendant never suggested that Dowson's account was a fabrication, such anticipatory rebuttal was improper. Furthermore, we do not think the technical distinction suggested by the state can be drawn between this case and *Roberts.* Defendant's refusal to give a written statement could well have been understood by the jury to be a refusal to give more information. Under our holding in *Roberts,* it was error to admit this testimony.

8. Having determined that there was error, we consider whether the error requires reversal. Before a Federal constitutional error can be called harmless, we must find it to be harmless beyond reasonable doubt. *State v. Roberts, supra; State v. Beck,* 289 Minn. 287, 183 N.W.2d 781 (1971). We note first that no objection to this testimony was made at trial and such failure to object at trial generally bars objection on appeal. Cf. *State v. Combs,* 292 Minn. 317, 195 N.W.2d 176 (1972). However, assuming such bar is waived on constitutional error, the statement at issue constituted only a few lines of a 500-page transcript. The prosecutor did not dwell on this point nor refer to it in closing argument. On cross-examination defendant's counsel elicited testimony to the effect that defendant was cooperative throughout the interview. In *State v. Walker,* Minn., 235 N.W.2d 810 (1975), we held that the admission of the statement, "I have nothing more to say," at the end of an interview was harmless error. If anything, the refusal to give a written statement involved in this case was less prejudicial than the evidence admitted in *Walker.* Refusal to give a written statement is likely to be taken as an ambiguous act not necessarily indicating fabrication, especially in view of defendant's willingness to answer all questions orally. We therefore hold that defendant was not prejudiced by the introduction of this evidence.

The judgment appealed from is affirmed.

Affirmed.