STATE of Minnesota, Respondent,

v.

Clyde (NMN) CALDWELL, Appellant.

No. C3–01–430.

Court of Appeals of Minnesota.

Jan. 29, 2002.

Review denied March 27, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Elizabeth V. Cutter, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN, Judge, and ANDERSON, Judge.

## OPINION

CRIPPEN, Judge.

Appellant disputes the trial court's refusal to suppress evidence obtained after an officer made a preliminary inquiry about the location of appellant's gun without first administering a Miranda warning. The trial court concluded that the police officer's limited questioning of appellant was appropriate because the police believed the gun was in the area and posed a threat to the police and the public. Because we find legal support for the application of the public-safety exception to the facts of the case, we affirm the trial court's determination.

## FACTS

On June 7, 2000, the Minneapolis police received a complaint from victim M.J. that an African–American male had assaulted him and threatened him with a gun. It is unclear if a dispatch went out on the call, but the record reflects that the police did not respond to M.J's initial complaint. Another call was made notifying the Minneapolis police that the "person with the gun" was back. Officer Mark Sletta and other Minneapolis police officers responded to the second call; the dispatch notified officers that a "black male," who had earli-

er assaulted and threatened M.J. with a gun, had returned.

When the officers arrived, they encountered three or four African American males and two females standing in front of the suspect's residence. Based on the dispatch's description of the assailant and for their own safety, the police officers handcuffed and frisked the men, including M.J. and appellant Clyde Caldwell. The officers did not find a gun on appellant, but Officer Sletta asked appellant if he had a gun. Appellant responded that he had three guns inside his residence and described the guns to the officer. Based on appellant's response, Officer Sletta obtained a search warrant, executed the warrant, and found three guns. After the police drove appellant to the Hennepin County Jail, the officer read appellant his Miranda rights and interviewed him. Appellant admitted that he owned the three guns and that he had been convicted of burglary, but he denied assaulting M.J. and threatening him with a gun. The state subsequently charged appellant with possession of a firearm by an ineligible person; a second-degree assault charge was stated but later dismissed.

At the omnibus hearing in September 2000, appellant's attorney moved to suppress appellant's pre-Miranda statements. The trial court denied appellant's motion, finding the statement admissible under the public-safety exception to Miranda—the doctrine whereby a police officer has freedom to inquire about the location of the gun for the sake of protecting himself or the public.

> There was a clear concern of the police—not to protect their safety, that had been accomplished through the pat search, but to protect the public safety by locating a gun in the area. And the court concludes that under [relevant precedent], the limited questioning of

the defendant as to whether he had a gun, even though the Miranda warnings had not been given, was not a violation of the principles articulated in *Miranda* and therefore the motion to exclude the statements made at the scene is denied based on the exigent circumstances exception to the Miranda requirement.

The first day of trial, appellant requested a continuance to hire private counsel. Appellant alleged that the public defender was not properly representing him. Appellant informed the trial court that he was not employed and that he had not made an effort to contact new counsel. The trial court acknowledged that appellant had a right to choose his own counsel, but concluded that appellant had not exercised this right within a reasonable period of time. The court found appellant's counsel highly competent and denied appellant's request for a continuance.

## ISSUES

1. Were appellant's pre-Miranda statements regarding the location of the guns admissible under the public-safety exception to the Miranda requirements?

2. Did the trial court abuse its discretion by denying appellant's request for a continuance?

## ANALYSIS

### 1.

When the facts are not in dispute, this court makes a de novo review of a pretrial order on a motion to suppress evidence; we are to review independently the facts and determine, as a matter of law, whether the evidence need be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

Appellant argues that the trial court erred by denying his motion to suppress his pre-Miranda statements because he

was in custody when the officers asked him if he owned a gun and because there was no threat to public safety warranting an exception to the Miranda rule. Appellant contends that his Fifth Amendment rights [1] were "flatly violated" and that his conviction should be reversed because the statements and evidence of the guns should have been suppressed.

 Statements made during a custodial interrogation cannot be admitted into evidence unless the suspect is given the Miranda warning and intelligently waives the right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612–13, 16 L.Ed.2d 694 (1966). A suspect does not have a constitutional right to a Miranda warning, but the warning serves as a device to protect the right against compulsory self-incrimination. *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). The United States Supreme Court recognizes limited exceptions to the Miranda warning. One of these narrow exceptions, based on protection of a police response to exigent circumstances, allows police officers faced with an immediate threat to public safety to ask questions necessary to protect the public or themselves before giving a Miranda warning. *New York v. Quarles*, 467 U.S. 649, 655–56, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984).

In *Quarles*, the victim told police that she had been raped and her assailant had just entered a nearby grocery store with a gun. *Id.* at 651–52, 104 S.Ct. at 2629. The police officers drove to the store, identified the suspect, and chased him through the store. *Id.* When an officer apprehended the suspect in the store, he discovered that the suspect was wearing an empty shoulder holster. The officer handcuffed the suspect and asked him where the gun was. *Id.* Based on the suspect's answer, the officer located the gun in an empty carton, arrested him, and read him the Miranda warning. *Id.*

The Court held that, based "on these facts," the public-safety exception applied but warned that this narrow exception should only be applied in exigent circumstances.

> [W]here spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception which we recognize today should not be made to depend on *post hoc* findings at a suppression hearing concerning the subjective motivation of the arresting officer.

467 U.S. at 656, 104 S.Ct. at 2631. The Court found that the circumstances in *Quarles* posed a threat to public safety because the gun was concealed somewhere in the grocery store where an accomplice might use it or where a customer or employee might discover it. *Id.* at 657, 104 S.Ct. at 2632. The Court reasoned that if the police are required to give the Miranda warning before asking necessary questions to ensure public safety, "suspects in Quarles' position might well be deterred from responding." *Id.* The Court further noted that the officer only asked the question necessary to locate the missing gun and continued the investigatory questions after giving the suspect the Miranda warnings. *Id.* at 659, 104 S.Ct. at 2633. The Court's focus in *Quarles* was on the police officer's immediate necessity to look for a weapon because the officer believed that the suspect has just disposed of it in a public place. *Id* at 657, 104 S.Ct. at 2632. In circumstances where the police or the

---

1. "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." U.S. Const. amend. V.

public's safety is in immediate danger, the Court will depart from Miranda because of the need for a police officer's spontaneous judgment and because of the personal risks that are involved. *Id.* at 659, 104 S.Ct. at 2633.

This court acknowledged that the narrow public-safety exception should only be used in exigent circumstances and declined to apply it in *State v. Hendrickson,* 584 N.W.2d 774 (Minn.App.1998). In *Hendrickson,* the police received a report of a stolen gun, and the gun-owner's daughter told police that the defendant admitted to her that he had taken the gun. *Id.* at 775. The police arranged for the daughter to meet with the defendant at a nearby apartment building, and at this meeting the police handcuffed and pat-searched the defendant. *Id.* The police did not find a gun on the defendant, but without first giving a Miranda warning, a police officer asked the defendant about the location of the gun. *Id.* This court held that the public-safety exception did not apply in *Hendrickson* because (1) the police did not have reason to believe that Hendrickson had just discarded the gun due to the eight hours that had passed since he stole the loaded gun; and (2) the officers' questioning about the location of the gun was "not reasonably prompted by an immediate threat to public safety." *Id.* at 777–78.

*Hendrickson* dealt with a legitimate police concern of getting the loaded gun off the streets, but the gun was not necessarily discarded in a public place as in *Quarles.*

The concern for the public safety that the Supreme Court spoke of in *Quarles* was not a concern about the inherent danger posed by any loaded handgun somewhere in the community; it was a concern about the danger posed by a gun discarded in a public place where an unknown passerby could discover it. *Id.* at 777.

■ We do not believe the application of the public-safety exception pronounced in *Quarles* turns on whether the police have reason to believe that the suspect has just discarded a gun in a building or on the street. Rather, the application of this narrow exception must be decided on a case-by-case basis, and the facts here, as the trial court determined, permit the use of the public-safety exception. The police officers responded to a call that the African American male suspect, who had assaulted and threatened the victim with a gun earlier that day, had returned. The officers found the victim, the suspect, and additional persons, who may have been companions of the suspect, in front of the suspect's house. Based on the police dispatch, the officers had reason to believe that the suspect, later identified as appellant, was carrying a gun or had just discarded it. Unlike the officers in Hendrickson, who were questioning a suspect eight hours after the gun had appeared in public, police here were acting within minutes of being called. After the police did not find any weapons on appellant, they were faced with the immediate necessity of locating the gun because appellant could have discarded it in a nearby public area, where an accomplice or a neighbor could have discovered it, putting their safety and the public's safety at risk. The officer here asked only the necessary question to retrieve the gun and to ensure police and public safety, and he did not continue with investigatory questions until after he gave the Miranda warning to appellant. The fact that appellant's response dispelled any immediate concern for public safety does not affect justification for the question.

Unlike *Hendrickson,* the police here were confronted with an uncontrolled situ-

ation and were working with limited facts. The situation posed a threat to the public safety that outweighed "the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Quarles*, 467 U.S. at 657, 104 S.Ct. at 2632. Because the facts here warrant the use of the public-safety exception to Miranda, the trial court did not err in denying appellant's motion to suppress his pre-Miranda statements to the police.

### 2.

A ruling on a request for a continuance is within the trial court's discretion and a conviction will not be reversed for denial of a motion for a continuance unless the denial is a clear abuse of discretion. *State v. Rainer*, 411 N.W.2d 490, 495 (Minn.1987).

Appellant argues that the trial court abused its discretion in denying his request for a continuance to hire a private attorney because he had a right to seek counsel of his own choice and he was not attempting to delay the trial. Appellant also claimed that there was no prejudice in granting the continuance because the trial was "relatively simple with only police officers" as witnesses.

■ The federal and state constitutions guarantee the criminal defendant the right to the assistance of counsel. U.S. Const., amend. VI; Minn. Const. art. 1, § 6; *Powell v. Alabama*, 287 U.S. 45, 63, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932); *State v. Fagerstrom*, 286 Minn. 295, 298, 176 N.W.2d 261, 264 (1970). "This right includes a fair opportunity to secure counsel of his own choice." *Fagerstrom*, 286 Minn. at 298, 176 N.W.2d at 264 (citing *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954)). A defendant cannot demand a continuance for the purpose of delay or for "arbitrarily choosing to substitute counsel at the time of trial." *State v. Vance*, 254 N.W.2d 353, 358 (1977).

■ The trial court denied appellant's request for a continuance because appellant's attorney was highly competent and because appellant did not exercise his right to obtain an attorney of his choice within a reasonable period of time. The record demonstrates that the court did not abuse its discretion in denying appellant's request for a continuance because (1) he had not made an effort to retain a private attorney of his choice within the three months before his trial; (2) he did not attempt to show a basis for asserting that his court-appointed attorney was not properly representing him; and (3) he was not employed and failed to demonstrate how he could pay for a private attorney.

### 3.

Appellant raises two additional issues in his pro se brief: (1) whether he was denied the right to a fair trial; and (2) whether his conviction of attempted burglary is an appropriate predicate offense for the charge that he was a felon in possession of a firearm.

Appellant argues that, because he stipulated to the facts at trial, the court found him guilty without reviewing the facts. But there is no evidence in the record to support appellant's contention that he did not receive a fair trial.

■ Appellant contends that, because his conviction of attempted burglary in the first degree was reduced to a misdemeanor offense, the court cannot convict him of being a felon in possession of a firearm. The trial court ruled that appellant's conviction of attempted burglary in the first degree was an appropriate predicate offense for charging appellant as a felon in possession of a firearm. The Minnesota Supreme Court has held that the elements of the convicted offense, rather than the

subsequent sentence, dictate the basis for the imposition of the 10–year firearm restriction.

We hold that the definitions of the offenses listed as crimes of violence in section 624.712, subdivision 5, relate to the elements of the offense for which the defendant was originally convicted rather than the disposition subsequently imposed by the trial judge.

*State v. Moon*, 463 N.W.2d 517, 521 (Minn. 1990). Furthermore, appellant's counsel conceded that the *Moon* case applies here because his earlier charge stated a crime of violence. Pursuant to *Moon*, the trial court properly held that appellant's conviction of attempted burglary in the first degree was an appropriate predicate offense for charging appellant as a felon in possession of a firearm.

### DECISION

Because the facts warrant the use of the public-safety exception to the Miranda mandate, we affirm the trial court's denial of appellant's motion to suppress his pre-warning statements to the police. We also affirm the trial court's denial of appellant's continuance motion because appellant cannot arbitrarily decide to substitute counsel at the time of trial.

**Affirmed.**