*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2128**

State of Minnesota,
Respondent,

vs.

Larry Jermaine McCool,
Appellant.

**Filed November 24, 2014
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-12-3234

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

On appeal from his conviction of first-degree controlled-substance crime (sale), appellant argues the district court (1) erred by denying appellant's motion to suppress

evidence obtained from a warranted search of appellant's car; (2) denied appellant his right to a fair trial by denying his request for an in camera review of the CRI's identity; (3) abused its discretion when it denied appellant's request for a continuance to hire substitute counsel; and (4) abused its discretion by denying his motion for a mistrial or to reopen the *Rasmussen* hearing based on new information. Appellant also raises three additional issues in his pro se brief. We affirm.

## FACTS

In January 2012, the Violent Offender Task Force began an investigation that involved appellant Larry McCool, a residential property in Minneapolis, and a 2001 white Cadillac Deville with an identified license-plate number. A confidential reliable informant (CRI)[1] reported that McCool was distributing crack cocaine from the residence and using the Cadillac to transport it. Investigators learned from police records that in October 2011 McCool had been stopped in the Cadillac and found to have marijuana in the car. In late January, they also observed McCool driving the Cadillac and at the residence under investigation.

On January 26, 2012, investigators arrested McCool based on their investigation and other information provided by the CRI when McCool was at the Public Safety Facility for a court appearance. That same day, investigators executed a search warrant at the residence and seized a large quantity of crack cocaine. The next day, investigators located the Cadillac in a parking ramp across the street from the Public Safety Facility.

---

[1] The informant had previously provided information that was corroborated and found to be true and accurate.

2

Taking McCool's keys from his inventoried property at the jail, an investigator drove the Cadillac to the impound lot and secured a search warrant. During a subsequent search of the Cadillac, investigators found 24 grams of crack cocaine in the glove box and the engine compartment, as well as assorted documents bearing McCool's name.

While the vehicle search was underway, an investigator interviewed McCool at the jail. The investigator activated a handheld digital audio-recording device before advising McCool of his *Miranda* rights, observed that a red light came on, and stopped the recording at the end of the interview. During this interview, McCool reportedly confessed that he had driven the Cadillac to his hearing the day before and that there was crack cocaine in the glove box and the engine compartment.

On February 2, 2012, the state charged McCool with first-degree controlled-substance crime (sale), in violation of Minn. Stat. § 152.021, subd. 1(1) (2010). McCool was represented by a private attorney until July 30, 2012, after which the district court granted McCool's request for appointment of a public defender. Through his new attorney, McCool moved the court:

- to suppress evidence resulting from the search of the Cadillac, arguing that the warrant was not supported by probable cause

- to suppress statements that he made, arguing that there was a substantial *Scales* violation and intentional destruction of evidence because the recording of his custodial interview was ultimately unavailable

- to disclose the identity of the CRI, or in the alternative, for an in camera review

- to suppress all evidence obtained as a result of McCool's warrantless arrest, arguing that it was not supported by probable cause.

The district court denied these pretrial motions. On April 30, 2013, the date set for trial, McCool requested a continuance in order to retain private counsel, which the district court also denied. During trial, McCool moved to reopen the *Rasmussen* hearing or for a mistrial based on new information elicited at trial about the missing recording of his custodial interview. The district court denied the motion. At the conclusion of the two-day trial, the jury found McCool guilty as charged. This appeal follows.

## D E C I S I O N

### I.

McCool argues that the district court clearly erred by denying his motion to suppress the evidence obtained from a search of the Cadillac. He contends that the search warrant was not supported by probable cause. Both the United States and Minnesota Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. To be valid, a search warrant must be supported by probable cause. *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999). We review a warrant application to determine whether the issuing magistrate had a "substantial basis" to conclude that probable cause exists. *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). An application has a substantial basis when there is a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332). Whether probable cause exists to issue a search warrant is determined under a "totality-of-the-circumstances" test. *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332.

4

"In reviewing the sufficiency of an affidavit under the totality of the circumstances test, [issuing judges] must be careful not to review each component of the affidavit in isolation." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985). "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004). A reviewing court gives great deference to the issuing judge's probable-cause determination. *State v. Rochefort*, 631 N.W.2d 802, 804-05 (Minn. 2001). "[T]he resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *State v. Holiday*, 749 N.W.2d 833, 840 (Minn. App. 2008) (quotation omitted).

Here, on January 27, the district court issued a warrant to search the Cadillac based on the following information contained in an affidavit: a CRI, who had previously provided reliable information to police, reported that McCool was distributing crack cocaine from the identified residence and was using the Cadillac to transport it; investigators executed a search warrant at the residence on January 26 and seized a "large quantity of crack cocaine"; investigators observed McCool driving the Cadillac and at the residence within 72 hours of the search-warrant application for the Cadillac; McCool had been stopped in the Cadillac approximately three months earlier and cited for marijuana in a motor vehicle; McCool was arrested on January 26 at the Public Safety Facility and the Cadillac was later found in a parking ramp directly across the street.

**Reliance on CRI**

Law enforcement may rely on information provided by a CRI in establishing probable cause for a search warrant. *See Wiley*, 366 N.W.2d at 269 (finding that probable

5

cause supported a search warrant based on corroborated information provided by a reliable CRI). The informant's veracity and basis of knowledge are among the considerations assessed under the totality-of-the-circumstances test. *State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998). A proven track record is "one of the primary indicia of an informant's veracity." *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999). A statement in the affidavit attesting to the informant's proven track is sufficient— elaboration concerning the specifics of the CRI's track record is not typically required. *See Wiley*, 366 N.W.2d at 269 (holding that, although more detail is preferable, a statement that an informant "has been used over several years successfully" was sufficient). Here, the affidavit provides:

> This CRI has provided names and addresses of parties known to the CRI to be involved in the distribution of narcotics, to your affiant. This CRI has provided information to local law enforcement officer[]s regarding narcotics and weapons traffickers in the Twin Cities metro area in the past. Information provided by the CRI was independently corroborated by your affiant and other law enforcement officers and found to be true and correct.

We conclude that this statement is sufficient to establish the CRI's veracity.

As for the informant's basis of knowledge, "[r]ecent personal observation of incriminating conduct has traditionally been . . . preferred," but corroboration of even minor details can lend credence to an informant's tip. *Id.* Here, the affidavit does not establish the CRI's basis of knowledge.[2] It simply states that "Your affiant learned from

---

[2] At the suppression hearing, an investigator testified that the CRI had reported firsthand observations of McCool in possession of crack cocaine and had identified McCool from a

6

a CRI that McCool was distributing crack cocaine from [the residence] and was using the [Cadillac]. The CRI further reported that McCool uses the [Cadillac] to transport his crack cocaine."

McCool argues that without an express statement regarding the CRI's basis of knowledge in the affidavit, it is insufficient to establish probable cause. But the totality-of-the-circumstances approach "recognizes that each informer is different and that all of the stated facts relating to the informer should be considered." *State v. McCloskey*, 453 N.W.2d 700, 703 (Minn. 1990). Independent corroboration of the information provided—even corroboration of minor details—can assist in assessing the reliability of the information given. *See id.* at 704 (stating that "minimal corroboration is at least another relevant factor" in the totality-of-the-circumstances test). An informant's basis of knowledge, reliability, and veracity "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' . . . ." *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328.

In *State v. Albrecht*, we concluded that an anonymous tip was insufficient to support a finding of probable cause for a search warrant because the information corroborated was easily obtained and publicly available. 465 N.W.2d 107, 109 (Minn. App. 1991). But unlike this case, the investigators in *Albrecht* had not established the informant's veracity. *Id.* at 108-09. In addition, investigators here had recently observed McCool at the residence, and in the Cadillac, which was found parked near where

photo lineup. This information was omitted from the search-warrant application and is therefore not part of our analysis.

7

McCool was arrested. A search of the residence, where the CRI claimed that McCool was distributing crack cocaine, resulted in the seizure of a large quantity of crack cocaine. McCool had also been stopped with marijuana in the Cadillac a few months earlier. Finally, based on the affiant's training and experience, "people who are involved in the distribution of narcotics often use vehicles to transport, protect, and hide their illegal narcotics."

The district court found that the information provided by the CRI, the subsequent corroboration by investigators, and the CRI's accuracy with past information, when taken together, were sufficient to establish probable cause, despite no statement in the affidavit about the CRI's basis of knowledge. Based on the totality of the circumstances and given the preference accorded to warrants in close cases, we conclude that the absence of an express statement of the CRI's basis of knowledge does not invalidate the search warrant here.

**Nexus**

McCool argues that the warrant application failed to establish a nexus between the alleged crime and the Cadillac. We disagree. An issuing judge "is entitled to draw common-sense and reasonable inferences from the facts and circumstances" set forth in an affidavit. *State v. Brennan*, 674 N.W.2d 200, 204 (Minn. App. 2004) (quotation omitted), *review denied* (Minn. Apr. 20, 2004). We conclude that the issuing judge properly determined based on information provided by the CRI and other information developed during the investigation that there was a sufficient nexus between the alleged crime and the Cadillac.

McCool also challenges the temporal nexus of the information provided and the search of the Cadillac. Evidence supporting a finding of probable cause must be closely related in time to the issuance of the search warrant. *State v. McGrath*, 706 N.W.2d 532, 544 (Minn. App. 2005). The affidavit indicates that the investigation began in January 2012 and that the information from the CRI was obtained during the course of the investigation. Within 72 hours of the search-warrant application, investigators had observed McCool in the Cadillac and at the residence where he was purportedly distributing crack cocaine and where a large quantity of crack cocaine was found on January 26. Based on the location of the Cadillac, it is reasonable to infer that McCool had driven the Cadillac on January 26. We conclude that the issuing judge properly determined that there was a sufficient temporal nexus between the alleged crime and the Cadillac.

Having reviewed the totality of the circumstances, including the role of the CRI and the nexus between the alleged crime and the Cadillac, we conclude that the search-warrant application contains specific facts sufficient to show a "fair probability that contraband or evidence of a crime will be found" in the Cadillac. The district court therefore did not clearly err by denying McCool's motion to suppress the evidence obtained from the search of the Cadillac.

**II.**

McCool argues that the district court abused its discretion by denying his motion for an in camera review of the identity of the CRI.[3] The district court found that McCool's assertion that the CRI's testimony would be helpful to his defense was based on "mere speculation" and "does not provide this Court with facts that would establish that the in[]camera review would be helpful."

Minnesota law recognizes a privilege to withhold the identity of a CRI because of the state's "'legitimate interest in protecting the identity of persons who provide information to law enforcement.'" *State v. Rambahal*, 751 N.W.2d 84, 90 (Minn. 2008) (quoting *State v. Litzau*, 650 N.W.2d 177, 184 (Minn. 2002)). This interest must give way, however, "when the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* (quotation omitted). The burden is on the defendant to establish the need for disclosure. *Id.*

The Minnesota Supreme Court has adopted four nonexclusive factors to consider when "determining whether to order disclosure of a confidential informant's identity: (1) whether the informant was a material witness; (2) whether the [informant's] testimony will be material to the issue of guilt; (3) whether testimony of officers is suspect; and (4) whether the informant's testimony might disclose entrapment." *Id.* (quotations omitted). But ultimately, whether to disclose the informant's identity "remains a

---

[3] McCool moved the district court for disclosure of the CRI's identity or, in the alternative, for an in camera review. On appeal, he does not challenge the denial of his motion for outright disclosure.

10

balancing test between the defendant's right to prepare a defense and the public's interest in effective law enforcement." *Id.* "If the defendant fails to meet this burden but is able to establish a basis for inquiry by the court, then the court should hold an *in camera* hearing to consider affidavits or to interview the informant in person." *State v. Ford*, 322 N.W.2d 611, 614 (Minn. 1982).

A defendant can establish a basis of inquiry for an in camera review "by making a prima facie showing challenging the veracity of a search warrant, or by making a prima facie showing that the informant may be a material witness at trial." *State v. Wessels*, 424 N.W.2d 572, 575 (Minn. App. 1988), *review denied* (Minn. July 6, 1988). It is inappropriate to hold an in camera review only "to allow defense counsel to conduct a fishing expedition." *State v. Moore*, 438 N.W.2d 101, 106 (Minn. 1989). "[C]ourts should not require *in camera* disclosure solely on the basis of speculation by the defendant that the informant's testimony might be helpful. The defendant must explain precisely what testimony he thinks the informant will give and how this testimony will be relevant to a material issue of guilt or innocence." *Syrovatka v. State*, 278 N.W.2d 558, 562 (Minn. 1979).

McCool did not explain to the district court how the CRI's identity or testimony would be relevant to a material issue of guilt or innocence. He argues for the first time on appeal that the CRI was a material witness.[4] But because McCool did not raise this argument to the district court, the district court had no opportunity to address it, and it is

---

[4]  The CRI did not testify at trial and no substantive information from the CRI was introduced at trial.

waived on appeal.  *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (holding that "[t]his court generally will not decide issues which were not raised before the district court").  We conclude that the district court properly found that McCool fails to provide more than "mere speculation" that disclosure of the CRI's identity would be helpful to his defense.  Therefore, the district court did not abuse its discretion by denying McCool's motion for an in camera review of the CRI's identity.

**III.**

McCool argues that the district court abused its discretion by denying his motion for a continuance to hire a private attorney.  We review the denial of a motion for a continuance for a clear abuse of discretion.  *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987).

The federal and state constitutions provide a criminal defendant the right to the assistance of counsel.  U.S. Const. amend. VI; Minn. Const. art. 1, § 6.  "This right includes a fair opportunity to secure counsel of his choice."  *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977).  But the right to counsel does not give a defendant "the unbridled right to be represented by counsel of his choice."  *Id*.  A defendant cannot demand a continuance for the purpose of delay or for "arbitrarily choosing to substitute counsel at the time of trial."  *Id*.  A decision on a motion for a continuance to secure private counsel "should be based on all facts and circumstances surrounding the request."  *Id*.

The facts and circumstances here show that McCool, who was charged on February 2, 2012, was originally represented by a private attorney.  In late July 2012, the district court granted that attorney's motion to withdraw.  McCool then requested and the

district court granted the appointment of a public defender. On April 30, 2013, the date set for trial, McCool moved the district court for a continuance to allow him to hire new private counsel. The district court denied the motion on the ground that the case was "getting very very old" and McCool was represented by a "very competent" and "very fine" public defender. The district court heard motions in limine that afternoon and empaneled the jury the following day.

In determining whether the district court properly exercised its discretion by denying a motion for a continuance, appellate courts consider "whether the defendant was prejudiced in preparing and presenting his defense." *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264-65 (1970). McCool does not argue that he was prejudiced; he argues that the state would not have been prejudiced by a continuance. In the absence of any prejudice to McCool, and given the extended length of time that McCool had to retain substitute private counsel, we conclude that the district court did not abuse its discretion by denying McCool's motion for a continuance.

## IV.

McCool challenges the district court's denial of his motion for a mistrial and to reopen the *Rasmussen* hearing based on new information in an investigator's trial testimony about the specific sequence of events relating to the unavailable recording of his custodial interview.

At the *Rasmussen* hearing, an investigator testified that he used a digital recording device that stores recordings on a memory card. The investigator explained that later, he was unable to open the file containing the recording, and that after consulting with

13

information-technology personnel, he concluded that the memory card was corrupted and discarded it. The district court denied McCool's motion to suppress evidence of McCool's statement, ruling that when the investigator discarded the memory card it had no apparent and material exculpatory value and was not done in bad faith, and there was no substantial *Scales* violation. At trial, the investigator testified again about the custodial interview. When asked why the recording was unavailable, the investigator stated, "When I attempted to download the file from the recorder to my computer, the file was apparently corrupted and it was not downloaded." On redirect and recross-examination, additional details came out about the sequence of events relating to attempts to upload and download the file.

Later that day, McCool moved for a mistrial and to reopen the *Rasmussen* hearing based on the investigator's testimony.[5] The motion was based on three pieces of new information: (1) the investigator had listened to the recording to prepare his report, (2) the memory card was thrown out "much later on in the process," and (3) elaboration on the upload/download process. The prosecutor agreed that some of the trial testimony had not been elicited at the *Rasmussen* hearing but contended that none of the new information contradicted the earlier testimony. The district court denied McCool's motion, acknowledging that some new information had come out at trial, but ruling that it had no impact on the court's denial of McCool's motion to suppress because there was still no

---

[5] McCool focused on the *Rasmussen* argument at the district court, but focuses almost entirely on the mistrial argument on appeal.

apparent and material exculpatory value to the memory card when it was discarded or any evidence of bad faith.

**Mistrial**

We review a district court's denial of a motion seeking a mistrial for abuse of discretion. *State v. Spann*, 574 N.W.2d 47, 52 (Minn. 1998). McCool argues that the district court abused its discretion by denying his motion for a mistrial because "the state's failure to disclose before trial that the audio may have existed on [the investigator]'s computer deprived McCool of an opportunity to investigate the computer and the audio record, which deprived McCool of his right to a fair trial." But because McCool did not ask the district court for an opportunity to conduct a forensic review, there is no decision to review on appeal.

"[A] mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different." *Id.* at 53. In exercising its discretion when ruling on a motion for a mistrial based upon a discovery violation, a district court should take into account: "(1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors." *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn. 1979).

Here, there is no indication that the recording (1) exists or (2) would contradict the investigator's testimony about McCool's purported confession. But even if a recording existed and it was established that McCool did *not* confess that the Cadillac contained crack cocaine, the warranted search of the vehicle—which was not based upon McCool's

15

purported confession—would have revealed the cocaine. McCool, therefore, cannot show prejudice based on the state's failure to clarify earlier the sequence of events leading to the loss of the recording. Because there is no reasonable probability that the outcome of the trial would have been different if the state had disclosed the information earlier, we conclude that the district court did not abuse its discretion by denying McCool's motion for a mistrial.

### Reopen *Rasmussen* hearing

McCool also contends that the district court erred by denying his request to reopen the *Rasmussen* hearing because, if a recording existed, it may have been exculpatory. The district court has inherent authority to decide motions to reconsider an omnibus ruling, and we review a district court's decision not to reopen an omnibus hearing under an abuse-of-discretion standard. *State v. Papadakis*, 643 N.W.2d 349, 356-57 (Minn. App. 2002). The district court ruled that the new information elicited at trial would not affect its ruling on McCool's motion to suppress his statement. We conclude that the district court did not abuse its discretion by determining that the possibility that exculpatory evidence might exist was insufficient to justify reopening the *Rasmussen* hearing.

In his pro se supplemental brief, McCool argues that the district court erred by denying his motion to suppress his statement because the investigator intentionally destroyed evidence when he discarded the memory card and the corrupted audio recording constitutes a substantial *Scales* violation. The district court found that (1) "there is no evidence that [the investigator] acted in bad faith when he decided to

16

discard the memory card" and (2) any *Scales* violation was not substantial because McCool does not dispute that a *Miranda* warning was given and the failure of the recording device was unintentional and unforeseen.

**Destruction of evidence**

"A defendant's right to due process of law is implicated when the [s]tate loses, destroys, or otherwise fails to preserve material evidence." *State v. Jenkins*, 782 N.W.2d 211, 235 (Minn. 2010). "The failure to preserve potentially useful evidence that is actually collected during a criminal investigation does not constitute a denial of due process unless the defendant shows bad faith on the part of the police." *Id*. McCool argues that the bad-faith element is satisfied because the investigator intentionally discarded the memory card.

When analyzing a destruction-of-evidence claim, appellate courts "consider whether the destruction was intentional and whether the exculpatory value of the lost or destroyed evidence was apparent and material." *State v. McDonough*, 631 N.W.2d 373, 387 (Minn. 2001). Here, the district court found that "[t]he record does not indicate that the exculpatory value of the memory card was apparent and material prior to [the investigator]'s decision to throw it away." On appeal, McCool does not specifically challenge this finding, which is supported by the record. We conclude that the district court did not err by denying McCool's motion to suppress his statement based on a destruction-of-evidence claim.

*Scales* **violation**

Whether a failure to record a custodial interrogation is a substantial violation of the *Scales* recording requirement is a legal question that we review de novo. *State v. Inman*, 692 N.W.2d 76, 79 (Minn. 2005). "Among the factors in determining the substantiality of a *Scales* violation is whether the violation is prejudicial to the accused." *Id.* at 81 (citing *State v. Scales*, 518 N.W.2d 587, 592 n.5 (Minn. 1994)). A violation is prejudicial "if the accused alleges, contrary to the prosecution's assertions, that no *Miranda* warning was given or that he did not waive his Miranda rights." *Id.* But if no party disputes whether the *Miranda* warning was given or whether the accused waived his right to remain silent, "the lack of a recording creates no prejudice to the accused." *Id.* Here, the district court correctly observed that McCool does not dispute that a *Miranda* warning was given or that he waived his rights. Because the lack of a recording does not raise any factual dispute about the existence and validity of a *Miranda* waiver, we conclude that the district court properly found that the corrupted audio recording is not a substantial *Scales* violation.

## V.

In a pro se supplemental brief and reply brief, McCool recounts his version of the events surrounding his arrest and the investigation and argues:

- the evidence found in the Cadillac, which was not registered to him and was not in his control on the date of his arrest, cannot support his conviction

- impounding the Cadillac without a search warrant violated his constitutional rights and

- the evidence was insufficient to convict him of first-degree "sale."

18

These supplemental arguments are unsupported by legal citation and do not warrant relief. We need "not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008).

**Affirmed.**