*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1391**

State of Minnesota,
Respondent,

vs.

Rico Patrick Howard,
Appellant.

**Filed April 11, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-14-24219

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness,
Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and
Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his conviction of second-degree murder after a guilty plea,

appellant Rico Patrick Howard argues that the district court abused its discretion when it

denied his request for substitute counsel at trial and when it denied his motion for a downward durational departure at sentencing. We affirm.

## FACTS

The state charged appellant with one count of intentional second-degree murder in violation of Minn. Stat. § 609.19, subd. 1(1) (2014), after he shot and killed another man. Appellant applied for and was provided public defenders to represent him.

On the first day of trial, before jury selection, the prosecutor explained the status of plea negotiations:

> [T]here wasn't actually an offer extended. There were some discussions regarding whether or not [appellant] would be amenable to the potential of a range. And so in the interests of not negotiating against ourselves, what I indicated to counsel was whether or not [appellant] would be interested in a range of something between 363 months and 240 months, wherein he would argue to the Court [concerning a downward departure] after a plea. And what I got back from the defense was that he wasn't interested in that.

The district court gave appellant and his public defenders time to discuss the possibilities for a plea agreement, and court recessed for the day.

The next day, the prosecutor formally offered a sentencing range of 204 to 400 months if appellant were to plead guilty, with the understanding that the state would argue at sentencing for a 363-month prison term, and appellant would argue for a downward durational departure. Based on appellant's criminal history score, the presumptive sentencing range under the Minnesota Sentencing Guidelines was 363 to 480 months. Appellant stated that he understood the offer and agreed to accept it. He was sworn and was questioned by counsel as required by Minn. R. Crim. P. 15.01. He

stopped short of entering a plea, saying that he was "not comfortable" with the plea agreement.

Appellant then made a pro se motion for substitute counsel because he was also "not comfortable" with his public defenders. The district court denied appellant's request because it was made on the day of trial and because appellant's proposed substitute counsel was not present.

The prospective jury panel was then brought into the courtroom. After the district court concluded general questioning of the prospective jurors, appellant again indicated that he wanted to accept the plea offer. Appellant pleaded guilty in exchange for the state's earlier offer. During the resumed plea colloquy with his attorneys, appellant explained that his earlier frustrations resulted from having felt rushed to make a decision about the plea offer. "[B]ecause of that . . . [he] felt like [he] either lost trust in [his] attorneys or felt like [they] weren't operating in [his] best interests." Appellant confirmed that he was "okay" with the public defenders facilitating the plea agreement and expressed that he wanted them to argue on his behalf at sentencing.

The district court ordered a presentence-investigation report (PSI) and encouraged appellant to cooperate with that process, explaining that appellant's counsel would "use that report to argue . . . for a more lenient sentence." After the PSI was prepared, the district court sentenced appellant to 363 months in prison, which was the bottom-of-the-box under the Minnesota Sentencing Guidelines. The district court denied appellant's request for a downward durational departure, explaining that "the Court would have to find compelling reasons that justify a departure and in this case [the Court] cannot do so."

The district court's conclusion that it did not have enough information on which to base a departure resulted in part because "the probation officer indicated that [appellant] didn't want to talk about some of the facts of the case." This appeal followed.

## D E C I S I O N

### I. Substitute Counsel

Appellant argues that the district court erred in denying his request for substitute counsel. Although made on the first day of trial, he asserts that his request was nevertheless timely because his "tremendous frustration with his attorneys caused exceptional circumstances." The state argues that appellant waived his substitute-counsel argument by pleading guilty and that the only issue properly before us for consideration on appeal is whether appellant may withdraw his plea. Appellant replies that "it is inconsequential whether this claim is raised as a constitutional violation of appellant's right to counsel or as a manifest injustice [under the plea-withdrawal standard] . . . because the end result is the same." In support, appellant argues that "[i]t is clear from appellant's principal brief the crux of his argument is that, by denying him substitute counsel, his guilty plea was not voluntary."

Improper denial of a substitute-counsel request may form the basis for a plea withdrawal, where the plea is shown to have been involuntary because of the denial. *See United States v. Taylor*, 652 F.3d 905, 909 (8th Cir. 2011) (noting that, for example, "[a] waiver [of counsel] is involuntary if the defendant is offered the 'Hobson's choice' of proceeding to trial with unprepared counsel or no counsel at all"). We therefore first

4

consider whether the district court erred in denying appellant's request for substitute counsel.

   A. *The district court did not abuse its discretion.*

We review a district court's denial of a substitute-counsel request for abuse of discretion. *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006). A criminal defendant's right to counsel entitles the defendant to be allowed "a fair opportunity to secure counsel of his choice," and an indigent defendant must "be provided competent counsel in all criminal proceedings." *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977). But an indigent defendant's right to counsel is limited and "does not give him the unbridled right to be represented by counsel of his choice." *Id.* "Although he may request a substitution of counsel, his request will be granted only if exceptional circumstances exist and the demand is timely and reasonably made." *Id.* "[E]xceptional circumstances are those that affect a court-appointed attorney's ability or competence to represent the client." *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001).

Appellant requested substitute counsel because he was "not comfortable" and "not satisfied" with his appointed counsel. Appellant relies on *Gillam* for the principle that "in certain circumstances an indigent defendant's disagreements or dissatisfaction with his court-appointed attorney could affect the court-appointed attorney's ability or competence in representing the defendant." *Gillam*, 629 N.W.2d at 450. But *Gillam* held that general dissatisfaction with counsel was not an exceptional circumstance. *Id.* at 449-50. Appellant cites no other law in support of his argument, and existing caselaw indicates that the circumstances here are not exceptional. *See State v. Voorhees*, 596

5

N.W.2d 241, 255 (Minn. 1999) (concluding that personal tension between counsel and defendant was not an exceptional circumstance); *State v. Worthy*, 583 N.W.2d 270, 279 (Minn. 1988) (noting that general disagreement with counsel's assessment of the case was not an exceptional circumstance). Appellant's counsel had already argued for and obtained a favorable pre-trial ruling for appellant. *See Clark*, 722 N.W.2d at 464-65 (holding that the district court did not abuse its discretion in denying a request for substitute counsel where the appointed counsel obtained favorable pretrial rulings and the district court was satisfied that the attorney was prepared for trial). We conclude that exceptional circumstances did not support appellant's request for substitute counsel.

In addition to the absence of exceptional circumstances, appellant's request was untimely. In *Clark*, the Minnesota Supreme Court concluded that a request for substitute counsel was untimely when it was made on the first morning of trial after jury selection had begun and appellant had made a speedy-trial request. *Id.* at 465. In *Worthy*, the supreme court concluded that a request to obtain substitute counsel on the first day of trial because of dissatisfaction with counsel's opinion was untimely. 583 N.W.2d at 276-77. Here, appellant made his request on the first day of trial, just before jury selection had begun. Although appellant named a particular attorney as prospective substitute counsel, appellant also acknowledged that he had not yet hired that lawyer. There was no indication that the lawyer would take appellant's case, then or ever, and the lawyer was not present in court. Appellant had nearly seven months to hire private counsel, which is a "fair opportunity to secure counsel of his choice." *See Vance*, 254 N.W.2d at 358. The district court acted within its discretion in declining to delay trial when appellant's

6

competent, court-appointed counsel was willing to represent him and no alternative counsel had been hired or was available. *See Worthy*, 583 N.W.2d at 278 (noting that appointed counsel was "experienced, competent, and prepared to try the case"); *Vance*, 254 N.W.2d at 359 (noting that appointed counsel was "competent and able . . . and was prepared for trial").

The district court did not abuse its discretion in denying appellant's request for substitute counsel. Because denial of this request is appellant's only challenge to his guilty plea, there is no basis for allowing him to withdraw his plea.

### B. Even if the district court abused its discretion, appellant waived this argument by pleading guilty.

The state argues that appellant waived his substitute-counsel argument by pleading guilty. Appellant responds that he did not waive the argument because the improper denial of substitute counsel is a structural error, which warrants reversal even in the absence of a showing of manifest injustice.

A counseled guilty plea "operates as a waiver of all nonjurisdictional defects," including claimed constitutional violations. *State v. Iverson*, 664 N.W.2d 346, 350 (Minn. 2003). The United States Supreme Court has held, however, that a proven violation of the constitutional right to choice of counsel is a structural error that requires reversal. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 140-41, 126 S. Ct. 2557, 2559 (2006). But importantly, *Gonzalez-Lopez* excludes indigent defendants from its holding. *See id.* at 151, 126 S. Ct. at 2565 ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."). At no point in the process

did appellant show that he had private counsel available and willing to represent him. Because appellant is indigent, *Gonzalez-Lopez* provides no support for his structural-error argument.

Critically, and after his substitute-counsel request was denied, appellant confirmed that he wanted his public defenders to continue representing him in the plea and sentencing processes. He explained during his plea that his earlier request was born of frustration at feeling rushed to make a decision. He made no claim during the plea colloquy that his plea was involuntary or the result of the earlier denial of his request for substitute counsel. Appellant therefore waived his substitute-counsel argument, even if the district court earlier abused its discretion, which we conclude it did not.

## II.    Downward Departure

Appellant argues that the district court erred in denying his motion for a downward durational departure because his offense was less serious than the typical second-degree murder. We review a district court's refusal to depart from the guidelines for an abuse of discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). Only in a "rare" case will an appellate court reverse a sentencing court's refusal to depart. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981).

The district court must order the presumptive sentence provided in the Minnesota Sentencing Guidelines unless the case involves "substantial and compelling circumstances" to warrant a departure. *Id.* A district court only considers offense-related factors when determining whether to grant a durational departure. *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). Specifically,

the district court considers "whether the conduct involved in the offense of conviction was significantly more or less serious than the typical conduct for that crime." *Id.*

Appellant identifies two reasons supporting his argument that the district court erred in not granting him a durational departure. First, he points to the PSI, which recited appellant's claim that the murder victim had threatened to "throw a pot of boiling water on him." Appellant argues from this that the victim was an aggressor, which is a permissible basis for a durational departure under Minn. Sent. Guidelines 2.D.3.a(1) (2014). The district court considered appellant's version of events and concluded that the record did not support it "because no details were provided [to the probation officer]." The district court found appellant's version of events not credible. And, even if the district court were to have believed that the victim was an aggressor, that fact would only permit departure—it would never require it. *See State v. Jackson*, 749 N.W.2d 353, 360 (Minn. 2008) (stating that if mitigating factors are shown, the district court may, but is not required to, depart).

Second, appellant argues, without legal citation or other support, that his having killed the victim with only a single shot makes this murder less serious than is typical. Appellant pleaded guilty to second-degree murder and admitted to shooting the victim, knowing that the shot would likely result in death. There is no legal support for appellant's argument that murdering a person with a single shot is significantly less serious than other second-degree murders. The district court acted within its discretion in concluding that this fact does not support a durational departure.

The district court acted within its discretion in denying appellant's motion for a durational departure.

**Affirmed.**