STATE of Minnesota, Respondent,

v.

Michael James MARTIN, Appellant.

No. A06–2460.

Supreme Court of Minnesota.

Jan. 3, 2008.

Samuel A. McCloud, Carson J. Heefner, McCloud & Heefner, P.A., Shakopee, MN, for Appellant.

Lori Swanson, Attorney General, St. Paul, MN, Kari L. Myrold, Interim Carver County Attorney, Mary E. Shimshak, Assistant County Attorney, Chaska, MN, for Respondent.

Bradford S. Delapena, Special Assistant State Public Defender, Minneapolis, MN, for amicus curiae State Public Defender.

Kathleen Heaney, Sherburne County Attorney, Arden Fritz, Assistant County Attorney, Elk River, MN, for amicus curiae Minnesota County Attorneys Association.

## OPINION

PAGE, Justice.

Appellant Michael James Martin was charged with fifth-degree possession of a controlled substance. At his first appearance, the district court set conditions of pretrial release requiring that Martin submit to a baseline urinalysis drug test in addition to random drug testing. In the alternative, the court set bail, without non-monetary conditions, of $5,000 cash or a $50,000 bond. When asked why bail in that amount was necessary, the court indicated that the amount had nothing to do with assuring that Martin made future court appearances. On appeal, the court of appeals affirmed, concluding that neither the bail amount nor the conditions of release were an abuse of discretion. On appeal to this court, Martin argues that: (1) bail and conditioned release may be imposed only for the purpose of assuring that a defendant will make future court appearances; and (2) bail set to coerce a defendant to accept conditioned release is unconstitutionally excessive. For the reasons discussed below, we reverse and remand.

On August 11, 2006, around 1:00 a.m., a homeowner called 911, stating that a stranger had knocked on her door asking for help. Responding police officers found Martin in the homeowner's yard on the ground, rolling around, slapping his chest and stomach, and saying that bugs were crawling on him. His clothing was disheveled and dirty, and he complained that his nose was dry. He also tried to drink from a sprinkler. There was drug paraphernalia and more than $2,000 in cash spread over the homeowner's yard. Martin indicated that he had been using cocaine the past few days. The police believed Martin was suffering from a drug overdose and had him taken to a hospital.

A month later, Martin was served with a summons and complaint charging him with fifth-degree possession of a controlled substance and drug paraphernalia. Approximately two months after the incident, Martin appeared at his first appearance with counsel. At that hearing, the State requested that the court set conditions for release, including the condition that Martin be required to take a baseline drug test and be subject to random drug testing. Martin's defense counsel objected, arguing that Martin could "bail out" of the conditions. The district court disagreed, indicating that bail would be set at $1,000,000. When asked about the amount of bail the court responded, "I want to set conditions." Defense counsel then requested bail without conditions, at which point the following discussion took place:

THE COURT: Okay, 5,000 cash, 50,000 bond, make all future Court appearances.

[DEFENSE COUNSEL]: Could the Court put on the record why it feel[s] 5,000 cash is necessary.

THE COURT: Because I would normally require him to submit to a base line UA so we know if he's not using.

[DEFENSE COUNSEL]: So this has got nothing to do with him appearing in Court?

THE COURT: No, I have a different read on the constitution than Jack Nordby does much as I respect him and his view on it.

[DEFENSE COUNSEL]: So I understand it, it has nothing to do with him appearing in Court. It's just that you want to do the base line.

THE COURT: That is correct.

THE CLERK: He has to do the base line today?

THE COURT: No, just post 5,000 cash or 50,000 bond.

[DEFENSE COUNSEL]: Or he can still have his conditional release, is that correct?

THE COURT: Yes, or he can provide a base line UA and he is released on his own recognizance on the condition that he be subject to random testing in the event anybody believes he's using and makes all future court appearances.

## I.

The Minnesota Constitution provides that "[a]ll persons before conviction shall be bailable by sufficient sureties," with one exception not applicable here. Minn. Const. art. I, § 7. It also prohibits excessive bail. Minn. Const. art. 1, § 5 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."). We have said that "the general purpose of bail is to ensure an accused's appearance and submission to the judgment of the court." *State v. Brooks,* 604 N.W.2d 345, 350 (Minn.2000).

The relevant part of Rule 6.02 of the Minnesota Rules of Criminal Procedure provides that

a person so charged shall be ordered released * * * unless the court, judge or judicial officer determines, in the exercise of discretion, that such a release will be inimical of public safety or will not reasonably assure the appearance of the person as required. When such a determination is made, the court, judge or judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or hearing, or when otherwise required, or, if no single condition gives that assurance, any combination of the following conditions:

(a) Place the person in the care and supervision of a designated person or organization agreeing to supervise the person;

(b) Place restrictions on the travel, association or place of abode during the period of release;

(c) Require the execution of an appearance bond in an amount set by the court with sufficient solvent sureties, or the deposit of cash or other sufficient security in lieu thereof; or

(d) Impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.

* * * *

*In any event, the court shall also fix the amount of money bail without other conditions upon which the defendant may obtain release either by posting cash or by sufficient sureties.*

Minn. R.Crim. P. 6.02, subd. 1 (emphasis added). The rule also lists factors for the court to consider in determining which conditions of release will reasonably assure appearance, including

the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions, record of appearance at court proceedings or flight to avoid prosecution, and the safety of any other person or of the community.

Minn. R.Crim. P. 6.02, subd. 2.

In *Brooks,* we considered whether cash-only bail violated the Minnesota Constitution and held that: (1) the general purpose of bail is to make sure the defendant appears in court and submits to the court's judgment; (2) our state constitution aims to protect the defendant rather than the courts and limits the government's power to detain a defendant before trial; and (3) cash-only bail failed to meet the constitution's guarantee of bail by sufficient sureties. 604 N.W.2d at 349–50, 354. We left open the question of whether pretrial conditioned release is constitutional. *Id.* at 353–54.

■ Martin's arguments may be fairly read as implying that Rule 6.02's conditional release provisions are constitutionally infirm because, like cash-only bail, the conditional release provisions set out in the rule do not provide for bail by sufficient sureties and because the rule permits conditions to be imposed for purposes other than to assure the defendant's appearance at future court proceedings. We assume without deciding that Martin is correct that the sole purpose of bail and conditions of release is to assure the defendant's appearance in court. Although Rule 6.02 permits the court to consider factors other than whether a defendant is likely to appear at future court proceedings when deciding what conditions to impose, the rule also provides that, "[i]n any event, the court shall also fix the amount of money

bail without other conditions upon which the defendant may obtain release either by posting cash or by sufficient sureties." Minn. R.Crim. P. 6.02, subd. 1. Thus, the rule assures that defendants will be given the alternate choice of the right to bail by sufficient sureties if release on nonmonetary conditions is ordered. Unlike the cash-only bail in *Brooks,* which takes away the defendant's choice of "alternative forms of sufficient surety," 604 N.W.2d at 354, conditioned release under the rule may be offered only as an alternative to money bail without conditions. Therefore, we conclude that Minn. R.Crim. P. 6.02, read as a whole, does not violate the Minnesota Constitution.

## II.

Martin also contends that the district court erred when it imposed conditions for his release that are impermissible under Rule 6.02. Martin argues that the language of the rule provides that bail or release conditions may be imposed only for the purpose of assuring a defendant's appearance at future court proceedings. According to Martin, conditioning release on compliance with drug testing does not serve that purpose. The State contends that the rule allows the court to set bail or impose conditioned release to either assure appearance or protect public safety.

■ "The amount of bail to be fixed in a particular case rests within the discretion of the trial court and its determination will not be reversed unless there is a clear abuse of that discretion." *State v. Huber,* 275 Minn. 475, 478, 148 N.W.2d 137, 140 (1967). We construe rules of procedure de novo. *State v. Nerz,* 587 N.W.2d 23, 24–25 (Minn.1998).

■ Under Rule 6.02, a defendant must be released during the pretrial stage on his or her own recognizance, on an

order to appear, or on execution of an unsecured appearance bond unless the district court determines "that such a release will be inimical of public safety or will not reasonably assure the appearance of the person as required." Minn. R.Crim. P. 6.02, subd. 1. If the court makes either of those determinations, the court may impose conditions "which will reasonably assure the appearance of the person." *Id.* The rule further provides that one of the determining factors as to which conditions will reasonably assure such appearance is "the safety of any other person or of the community." Minn. R.Crim. P. 6.02, subd. 2. Thus, the rule, by its express terms, permits public safety concerns to be considered in determining whether the conditions imposed will assure the defendant's appearance at future court proceedings. Therefore, the district court did not abuse its discretion when it considered public safety as a factor in setting conditions for Martin's pretrial release.

■ A question not raised by Martin, yet one that is difficult to ignore, is whether, on the facts presented, the district court abused its discretion when it imposed the drug-testing requirements on Martin as a condition of his pretrial release. We think it is a close question. On the one hand, based on the overdose incident giving rise to the charges against Martin, the court had some reason to be concerned about Martin's, as well as the community's, safety. Martin was found by the police in someone's yard rolling around on the ground saying that bugs were crawling on him and attempting to drink from a sprinkler. Clearly, this conduct is a factor that would support a district court's imposition of a drug-testing requirement as a condition of pretrial release. On the other hand, the facts before the court at the time of Martin's first appearance call into question whether

Martin should have been released on his own recognizance or on an unsecured appearance bond. At the time of the overdose incident, the police were evidently not so concerned about Martin's risk to public safety that they felt the need to place him under arrest. Indeed, it was a month before he was charged by summons and complaint and it was another month before Martin was required to make his first appearance, which he did voluntarily. The fact that a month elapsed between Martin's overdose incident and the issuance of the complaint and the fact that another month elapsed between the time the complaint was issued and his first appearance weighs against the district court's concerns about Martin being a public safety risk. Moreover, the fact that Martin appeared at the hearing for his first appearance weighs against concerns that Martin would not appear as required at future court appearances or submit himself to the judgment of the court. Also, weighing against the need for imposing conditions for release is the fact that, except for the overdose incident, there is no indication in the record that Martin had a criminal history and the fact that there is nothing in the record suggesting that he engaged in any other illegal conduct between the overdose incident and his first appearance.

■ Some legal commentators argue that drug use by itself correlates to the likelihood that a defendant will not make future appearances, *e.g.,* Richard B. Abell, *Pretrial Drug Testing: Expanding Rights and Protecting Public Safety,* 57 Geo. Wash. L.Rev. 943, 944 n. 6 (1989), a premise that the court of appeals seems to have accepted. *See State v. Dillon,* 529 N.W.2d 387, 395 (Minn.App.1995) ("Use of unlawful substances jeopardizes the assurance of defendant's appearance in court."). But applying that logic, drug offenders would seldom, if ever, be released on their own

recognizance. Such a blanket policy is inconsistent with Rule 6.02, and we decline to adopt it. Because Rule 6.02, subdivision 2, requires the district court to "take into account the nature and circumstances of the offense charged" when determining the reasonable likelihood of the defendant's appearance, the "use of unlawful substances" is more appropriately considered on a case-by-case basis as a factor under the rule. Here, it appears that the basis for imposing the condition that Martin comply with drug testing was the fact that imposing such a condition was the district court's standard practice. Such a practice violates the rule.

As noted previously, the question of whether the district court abused its discretion in not releasing Martin on his own recognizance or on an appearance bond is a close one. It is also a question we need not decide here. Because we conclude that the district court set Martin's conditions of release based on its standard practice without considering the particular facts before it, we remand to the district court to reconsider what, if any, conditions of release are necessary to assure Martin's appearance at future court appearances and submission to the judgment of the court.

### III.

■ Finally, we address Martin's claim that the money bail set in his case was constitutionally excessive. We read Martin's brief to argue that the bail is excessive because there is no evidence that he would not appear or submit to the judgment of the court as ordered. He also contends that bail was excessive as it was imposed simply to provide an incentive for him to accept the conditioned release terms offered by the district court. We review the amount of bail set in a particular case for an abuse of discretion. *State*

*v. Huber*, 275 Minn. 475, 478, 148 N.W.2d 137, 140 (1967).

■ Here, the district court's statements on the record can be fairly read to indicate that the only purpose for setting monetary bail as it did was to encourage Martin to submit to drug testing. No other reason was given. Rule 6.02, however, does not authorize the setting of monetary bail for such a purpose. Because the record indicates that the district court set bail as it did solely to encourage Martin to accept conditioned release, we conclude that the district court violated Rule 6.02's requirement that bail be set without other conditions. By doing so, the district court abused its discretion. Having concluded that the district court violated Rule 6.02, we need not reach Martin's claim that his bail was constitutionally excessive.

For the above-stated reasons, we reverse the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.