*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1630**

State of Minnesota,
Respondent,

vs.

Joseph John West, IV,
Appellant.

**Filed July 6, 2015
Affirmed in part, reversed in part, and remanded
Cleary, Chief Judge**

Isanti County District Court
File No. 30-CR-14-9

Lori Swanson, Attorney General, St. Paul, Minnesota;

Jeffrey R. Edblad, Isanti County Attorney, Cambridge, Minnesota; and

Scott A. Hersey, Special Assistant Isanti County Attorney, Minnesota County Attorneys Association, St. Paul, Minnesota (for respondent)

Mark D. Kelly, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**CLEARY**, Chief Judge

The state charged appellant Joseph John West, IV with first-degree driving while impaired under Minn. Stat. § 169A.20, subd. 1(2) (2014) and Minn. Stat. § 169A.24 (2014). Appellant challenged the stop, the expansion of the stop, and the officer's probable cause to invoke the implied consent advisory. The district court held that there was a reasonable, articulable suspicion for the stop and expansion, and that there was probable cause to invoke the implied consent advisory. The parties agreed to a trial pursuant to Minn. R. Crim. P. 26.01, subd. 3, and the district court found appellant guilty. Before trial, the district court imposed a $5,000 cash-only bail and ordered it forfeited when appellant violated the conditions of his release. We affirm the district court's Fourth Amendment conclusions, but reverse and remand for the district court to reinstate the forfeited $5,000 cash-only bail.

## FACTS

Shortly before 1:00 a.m., Officer Kathryn Walker was driving westbound on Third Avenue towards an intersection in the city of Cambridge, Minnesota. Officer Walker observed a pickup truck traveling southbound towards Third Avenue and making a right-hand turn to go westbound in front of her. The officer further observed the truck make a wide right-hand turn into the oncoming lane of traffic. The truck nearly hit the snowbank on the left-hand side of the road. Officer Walker followed the vehicle and observed it stop at an intersection. The driver had the left-turn signal on,

but switched it to the right-turn signal before turning right. The vehicle made several quick turns and eventually went to an alleyway behind some apartments. The officer believed that the driver was being evasive and initiated a traffic stop.

Officer Walker observed appellant "moving around" and "digging through his car." She made a passenger-side approach and noticed a butane torch and mechanic's gloves inside. Based on her training, the officer associated these items as commonly used to smoke methamphetamine through a glass pipe. She believed that appellant could have been using methamphetamine based on his "sunken cheeks," his nervous and agitated demeanor, and his failure to make eye contact with her. Officer Walker asked appellant if he used methamphetamine. Appellant responded that the last time he used methamphetamine was before he went to jail the previous summer. Appellant did not have slurred speech or blood shot or watery eyes. The officer then returned to her vehicle, ran appellant's name through a database, and discovered that his license had been revoked.

Officer Walker requested, and appellant consented to, a search of his vehicle. The officer found an unused hypodermic needle "in the cubby of the driver's side door." After finding the needle, Officer Walker believed that appellant had used controlled substances. She requested a canine unit to come and examine the truck. The canine indicated that there were controlled substances somewhere on the vehicle, but the police did not find any.

3

Officer Walker then placed appellant under arrest for driving after revocation, but did not conduct field sobriety tests outside due to the cold and icy conditions. The officer administered standard field sobriety tests once they arrived at the Isanti County Jail. Appellant passed the horizontal gaze nystagmus. Appellant then performed the walk-and-turn test. He failed to properly step heel-to-toe and made an incorrect turn. Finally, appellant performed the one-legged stand test. Appellant made a mistake by counting "one-one, one-two, one-three" instead of "1,001, 1,002, 1,003" as he had been instructed. Officer Walker gave appellant an implied-consent advisory because she believed that he had been driving under the influence of a controlled substance. Appellant agreed to take a blood test and stated that he did not wish to speak with an attorney. The blood test identified methamphetamine and amphetamine.

Appellant made his first appearance on January 6, 2014. At the first appearance, when discussing appellant's bail, the state noted that appellant was convicted of criminal vehicular homicide in 2002 while driving under the influence of controlled substances. The judge set $250,000 unconditional-release bail or $125,000 conditional-release bail. Appellant posted a conditional-release bond, which required him to refrain from using drugs. On January 10, appellant appeared in court for violating the terms of his release by testing positive for methamphetamine and amphetamine. Because appellant violated the conditions of release, the state requested a "cash performance obligation" of $5,000 in addition to any and all bail bonds. The district court increased bail to $500,000 without conditions, $250,000 with conditions, plus a $5,000 "cash

4

performance bond."[1]  On January 16, the district court removed the public defender representing appellant because appellant was able to post a conditional release bond and the cash-only bail.

On February 6, appellant appeared for a hearing.  The district court required appellant to submit to a urinalysis, and appellant apparently attempted to use a squeeze bottle to falsify the test.  Appellant then admitted to smoking synthetic marijuana.  The district court raised the unconditional bail to $750,000, raised the conditional bail to $500,000, required an additional $10,000 cash-only bail, and ordered the prior $5,000 cash-only bail forfeited.  At the time that the $5,000 was forfeited, appellant appeared in front of the court pro se because he still had not hired a private attorney after the court dismissed his public defender.  On February 12, appellant failed a urinalysis and failed to show up for testing thereafter.  The district court issued a warrant and ordered all bail forfeited.  The district court later ordered all of the bail bonds reinstated except for the $5,000 cash-only bail and minor fees.

On April 2, the district court held a contested omnibus hearing to determine whether the state violated appellant's Fourth Amendment rights the night of the arrest by stopping him and expanding the scope of the stop.  The district court denied appellant's motion to suppress evidence and dismiss the charges.  The district court

_____

[1] Based on the record, it is unclear where the term "cash-performance bond" originated. But the district court functionally imposed what the supreme court has termed cash-only bail. *State v. Brooks*, 604 N.W.2d 345, 347 (Minn. 2000) *as modified* (Mar. 15, 2000).

found appellant guilty and he now challenges the district court's pre-trial rulings and the $5,000 cash-only bail forfeiture.

## D E C I S I O N

## I.

Appellant challenges the district court's holdings that there was reasonable suspicion for stopping him and that there was reasonable suspicion for expanding the scope of the stop. The Fourth Amendment to the United States Constitution, and article I of the Minnesota Constitution, prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Subject to only a few exceptions, searches conducted outside the judicial process are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967).

"[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992). We review the district court's findings of fact under a clearly erroneous standard. *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007).

### A.    The initial stop

Appellant first argues that the district court erred by finding that Officer Walker had a reasonable, articulable suspicion for suspecting that he was driving under the influence or that he committed a traffic violation. "A brief investigatory stop requires

6

only reasonable suspicion of criminal activity, rather than probable cause." *State v. Pike*, 551 N.W.2d 919, 921 (Minn. 1996). The stop must be "based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* at 921-22 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)). Based on a consideration of the totality of the circumstances, a *Terry*-type stop has to be justified by an objective manifestation that the person stopped is engaged in criminal activity or is about to be engaged in criminal activity. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

The record here indicates that Officer Walker had a reasonable, articulable suspicion for believing that appellant was driving under the influence. Appellant argues that Officer Walker could not tell whether he drove into the left-hand lane because there was no center-line demarcation and there was snow covering the curbs. But the district court found that appellant turned into the oncoming lane of traffic and appellant has not demonstrated that the finding is clearly erroneous. Based on our review of the squad video, appellant turns almost far enough into the left lane to hit the snowbank. The failure to turn into the right-hand lane was a violation of Minn. Stat. § 169.18, subd. 1 (2014).

Officer Walker also observed appellant changing his turn signal from left to right just prior to making a turn. Minnesota law requires a "signal of intention to turn right or left . . . continuously during not less than the last 100 feet traveled by the vehicle before turning." Minn. Stat. § 169.19, subd. 5 (2014). Officer Walker had reasonable

7

suspicion to stop the vehicle based on both traffic violations. *See State v. George*, 557 N.W.2d 575, 578 (Minn. 1997) ("Ordinarily, if an officer observes a violation of a traffic law . . . the officer has an objective basis for stopping the vehicle.").

### B. Expanded scope

The district court denied appellant's request to suppress any evidence discovered after Officer Walker expanded the scope of the stop. Appellant argues that Officer Walker impermissibly expanded the scope of the stop three times: by asking him when he had last used methamphetamine, by asking for consent to search his vehicle, and by conducting a dog sniff of his vehicle.

During an investigatory stop, the officer's questions must be limited to the purpose of the stop. *State v. Syhavong*, 661 N.W.2d 278, 281 (Minn. App. 2003). "To remain constitutional, an intrusion not strictly tied to the circumstances that rendered the initiation of the stop permissible must be supported by at least a reasonable suspicion of additional illegal activity." *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012). Each additional intrusion of the stop has to be tied to either (1) the original purpose of the stop, (2) independent probable cause, or (3) a reasonable, articulable suspicion. *State v. Askerooth*, 681 N.W.2d 353, 365 (Minn. 2004). Whether the police have a reasonable suspicion for expanding the scope of the stop is determined from the totality of the circumstances. *Syhavong*, 661 N.W.2d at 281.

Officer Walker had a reasonable suspicion that appellant had been using drugs or possessed drugs (or other contraband) in his vehicle. First, Officer Walker testified that

she saw a butane torch and a pair of mechanic's gloves in the vehicle. She testified that, in her experience, those items are commonly used by individuals to use methamphetamine. Appellant counters that the butane torch and mechanic's gloves are common items that can be used for innocent purposes. Appellant is correct that, standing alone, such common items cannot create a reasonable suspicion of criminal activity. *See State v. Bergerson*, 659 N.W.2d 791, 797 (Minn. App. 2003) (stating that suspect's single purchase of items used to manufacture methamphetamine, without more, did not create a reasonable suspicion for a stop). But the state did not rely on the torch and gloves alone, and they could be used as one fact among others to arrive at reasonable suspicion. *See State v. Vereb*, 643 N.W.2d 342, 347 (Minn. App. 2002) (relying on purchase of cold tablets and driving behavior to justify stop and investigation).

Second, Officer Walker testified that appellant was agitated, nervous, spoke rapidly, avoided eye contact, and had sunken cheeks. Officer Walker was trained to associate these characteristics with someone using methamphetamine. While nervousness alone is not sufficient to create a reasonable suspicion, it can "be coupled with other particularized and objective facts." *Syhavong*, 661 N.W.2d at 282.

Third, Officer Walker initially stopped appellant shortly before 1:00 a.m. because he had driven into the oncoming lane of traffic and she believed that he might have been driving under the influence. *See State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001) (relying on vehicle crossing a fog line to establish reasonable suspicion

9

for suspecting the driver of criminal activity); *see also State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998) (incorporating the time of day into the probable cause determination and recognizing that drinking is often involved later at night).

Based on the totality of the circumstances, Officer Walker could expand the scope of the stop by questioning appellant whether he used methamphetamine and for consent to search his vehicle. *See Syhavong*, 661 N.W.2d at 282 ("In arriving at a reasonable suspicion of criminal activity, an officer may make inferences and deductions that might elude an untrained person.").

Finally, appellant argues that the district court erred by finding that Officer Walker had reasonable suspicion to request a dog sniff. In addition to the three facts discussed above, Officer Walker found an unused hypodermic needle in the truck during her search. Officer Walker had a reasonable, articulable suspicion for conducting a limited dog sniff around the motor vehicle. *See State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002) (requiring reasonable suspicion of drug-related activity before conducting a dog sniff to detect the presence of narcotics).

### C.    Field sobriety tests

Appellant next argues that there was not a reasonable, articulable suspicion to request him to perform field sobriety tests. An officer can request a driver to submit to field sobriety tests when the officer has a reasonable, articulable suspicion to believe that a person has been driving while under the influence. *State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981).

Appellant argues that the officer did not have a reasonable suspicion to perform field sobriety tests because he did not have slurred speech, bloodshot eyes, or alcohol on his breath. However, Officer Walker suspected that appellant was under the influence of methamphetamine and did not expect to find indicia of alcohol consumption. Instead, Officer Walker had reasonable suspicion to conduct field sobriety tests based on appellant's driving behavior, appellant's demeanor and appearance, the butane torch and mechanic's gloves, and the hypodermic needle found in appellant's vehicle.

### D.    Probable cause to request a chemical test under the implied consent law

Appellant argues that the district court erred by finding that probable cause existed for a chemical test under the implied consent law. An officer can request that a person submit to a chemical test when the officer "has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired, and one of four conditions exist: (1) the person has been placed under arrest for driving while impaired; (2) the person was in a motor vehicle accident resulting in property damage, personal injury, or death; (3) the person refused to take a PBT; or (4) a PBT indicated an alcohol concentration of .08 or more. Minn. Stat. § 169A.51, subd. 1(b) (2014).

"Probable cause under section 169A.51, subdivision 1(b), exists whenever there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or was operating or was in physical control of a motor vehicle while impaired." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011)

11

(quotation omitted). The reasonableness of an officer's action is an objective inquiry, and the probable cause standard asks whether the totality of the circumstances would lead a reasonable officer to entertain a strong suspicion that an individual committed a crime. *Id.* at 363. The results of field sobriety tests can support a probable cause determination. *State v. Klawitter*, 518 N.W.2d 577, 585 (Minn. 1994).

Despite appellant's argument to the contrary, the totality of the circumstances would lead a reasonable officer to entertain a strong suspicion that appellant was driving under the influence: (1) appellant made mistakes in two field sobriety tests; (2) appellant drove into an oncoming lane of traffic; (3) appellant admitted to previously using methamphetamine; (4) Officer Walker believed that appellant had the appearance and demeanor of a person who uses methamphetamine; (5) appellant had a hypodermic needle in his truck; and (6) appellant had a butane torch and mechanic's gloves in his truck. Given the numerous facts, Officer Walker had probable cause to believe that appellant was operating the vehicle under the influence of a controlled substance.

### E. Consent for the chemical test

Appellant next argues that his consent to the chemical test was not freely given. Appellant contends that "when Officer Walker informed [him] that refusal to take the test is a crime, the Officer by implication made clear that Appellant's only true choice was to take the test." For a search to fall under the consent exception, the state must show by a preponderance of the evidence that the defendant freely and voluntarily consented. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). Whether consent is

12

voluntary depends on the totality of the circumstances. *State v. Harris*, 590 N.W.2d 90, 102 (Minn. 1999). And "an encounter becomes coercive[] when the right to say no to a search is compromised by a show of official authority." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).

Appellant argues that he was coerced by the implied consent advisory informing him that a refusal to take the test is a crime. The supreme court rejected appellant's argument in *State v. Brooks*:

> If a driver refuses the test, the police are required to honor that refusal and not perform the test. Although refusing the test comes with criminal penalties in Minnesota, the Supreme Court has made clear that while the choice to submit or refuse to take a chemical test will not be an easy or pleasant one for a suspect to make, the criminal process often requires suspects and defendants to make difficult choices.

838 N.W.2d 563, 571 (Minn. 2013) (citations and quotation omitted). The fact that appellant was informed that he had a right to refuse the chemical test supports a finding of voluntariness. *Id.* at 572.

This court should also look to the "nature of the encounter, the kind of person the defendant is, and what was said and how it was said" in examining whether consent was voluntarily given or coerced. *Id.* at 569 (quotation omitted). Here, the police suspected that appellant was driving under the influence based on numerous facts and because he failed two field sobriety tests. Appellant was under arrest at the time of the advisory for driving after revocation, but a person who has been seized may still voluntarily consent. *Diede*, 795 N.W.2d at 847. Before taking the test, appellant had the option of speaking

with an attorney and was not subject to repeated police questioning. Appellant has also been under arrest for driving under the influence before and is familiar with the process. Based on the totality of the circumstances and *Brooks*, appellant voluntarily consented to the chemical test.

## II.

The district court imposed a $5,000 cash-only bail in addition to either conditional-release bail or unconditional-release bail. When appellant failed a urinalysis, the district court ordered the $5,000 cash-only bail forfeited and imposed additional $10,000 cash-only bail. The parties made arguments before this court about whether the forfeited $5,000 and subsequent criminal punishment for driving while impaired violated the Double Jeopardy Clause. We do not need to reach these arguments because the $5,000 cash-only bail was an unconstitutional surety under Minn. Const. art. I, § 7, and we reverse and remand to have the cash-only bail reinstated in the interests of justice.[2]

The Bail Clause of the Minnesota Constitution provides that all "persons before conviction shall be bailable by sufficient sureties." Minn. Const. art. I, § 7. The general purpose of bail is to make sure that a defendant appears in court and submits to the

---

[2] The parties did not argue the constitutionality of the district court imposing cash-only bail in addition to the $250,000 conditional-release bail or $500,000 unconditional-release bail, but we can address the issue in the interests of justice. *See* Minn. R. Civ. App. P. 103.04 (appellate court may review any matter "as the interest of justice may require"); *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) ("[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's . . . failure to specify issues or to cite relevant authorities." (quotation omitted)).

court's judgment. *Brooks*, 604 N.W.2d at 349-50. The district court can impose conditions of release if a defendant's release will "endanger the public safety or will not reasonably assure the defendant's appearance." Minn. R. Crim. P. 6.02, subd. 1. The district court can choose from four conditions to ensure a defendant's appearance, including "[r]equir[ing] an appearance bond, cash deposit, or other security." *Id.*, subd. 1(c).

The supreme court has interpreted the Bail Clause of the Minnesota Constitution as prohibiting the court "from setting a monetary bail amount that can be satisfied only by a cash deposit in the full amount of bail set by the court." *Brooks*, 604 N.W.2d at 352; *see also State v. Martin*, 743 N.W.2d 261, 265 (Minn. 2008) (stating that "cash-only bail failed to meet the constitution's guarantee of bail by sufficient sureties"). The supreme court held that a district court cannot restrict a defendant's constitutional right "to post bail by providing alternative forms of sufficient surety" by requiring cash-only bail. *Brooks*, 604 N.W.2d at 354.

This case is distinguishable from *Brooks* because here the district court imposed cash-only bail in addition to $250,000 conditional-release bail or $500,000 unconditional-release bail. Regardless of appellant's option to pay conditional- or unconditional-release bail, the imposition of additional cash-only bail violated his constitutional right to provide an alternative form of sufficient surety. The problem was compounded by the fact that appellant was not represented by an attorney when the district court imposed the unconstitutional cash-only bail or when the court ordered the

15

$5,000 forfeited, because the district court had improperly dismissed appellant's public defender.[3] If an attorney had been present to represent appellant, she may have objected to the state's astonishing claim to the cash-only bail: "I don't care whose money it is, it's now the State's."

The district court should have ordered appellant to choose from conditional-release bail, or unconditional-release bail. If a district court could impose cash-only bail so long as it is coupled with additional bail, then *Brooks* would be undermined. Because the district court's imposition of additional cash-only bail violated appellant's constitutional right to provide an alternative form of sufficient surety, we remand to the district court to return the $5,000. *See* Minn. R. Civ. App. P. 103.04 ("The appellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require.").

**Affirmed in part, reversed in part, and remanded.**

---

[3] The district court dismissed appellant's public defender because his father posted bail for him. The mere fact that appellant could post bail with the help of a third party was insufficient to remove the public defender. *See* Minn. Stat. § 611.17(b) (2014) (requiring the court to make a determination of financial eligibility based on the "applicant's assets and liabilities" but not including the assets of third parties).