*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2043**

State of Minnesota,
Respondent,

vs.

Quentin Laurel Rasmussen,
Appellant.

**Filed November 30, 2015
Reversed and remanded
Smith, Judge**

Pennington County District Court
File No. 57-CR-13-826

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Alan G. Rogalla, Pennington County Attorney, Stephen R. Moeller, Assistant County Attorney, Thief River Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Peterson, Judge; and Larkin, Judge.

**UNPUBLISHED OPINION**

**SMITH**, Judge

We reverse the district court's denial of appellant's motion to suppress because the district court abused its discretion when it imposed a condition of pretrial release allowing warrantless, suspicionless searches of appellant's home.

**FACTS**

On September 23, 2013, appellant Quentin Laurel Rasmussen appeared before the district court for a first appearance on charges of felony controlled-substance crime, gross misdemeanor counterfeiting, and misdemeanor possession of drug paraphernalia. Before the hearing, Rasmussen and his attorney reviewed the charges against Rasmussen, discussed the maximum and minimum penalties, and reviewed some of the facts.

Rasmussen had been released from custody before the hearing and appeared voluntarily. The prosecutor did not object to Rasmussen remaining released with conditions. The district court then reviewed the conditions of release with Rasmussen, notified him of his next court date, and stated that Rasmussen would be provided with a copy of the conditional-release order. The district court did not set monetary bail as an alternative to conditional release. The district court issued an order for unconditional or conditional release, outlining the conditions of Rasmussen's release. One of the conditions stated that, "Defendant is subject to random searches of his/her person, possession, residence(s), and/or motor vehicle(s) by a peace officer or probation officer, with or without probable cause, to ensure compliance with these conditions."

2

Subsequently, just after midnight on October 25, 2013, officers from the Thief River Falls Police Department arrived at Rasmussen's apartment to perform a conditions check. Before conducting the check, the officers confirmed that Rasmussen's conditions (including the home-search condition) were still in effect. The officers observed Rasmussen's vehicle parked in the driveway and a light on in Rasmussen's apartment. As the officers approached Rasmussen's apartment, Officer Scott Mekash heard a male yell out, "the cops are coming for you, they are in the church parking lot," or something similar.

Officer Vern Wittenberg proceeded to Rasmussen's door and knocked, but nobody answered. Officer Wittenberg heard people moving inside the apartment, so upon Officer Mekash's arrival, the officers tried the door and found that it was unlocked. Upon opening the door, the officers noted three occupants, one of whom the officers recognized as Rasmussen. The officers announced that they were there to perform a conditions check. Officers Wittenberg and Mekash then patted down the other two individuals, and Officer Wittenberg found a glass pipe and a small plastic bag containing "a small amount of crystal substance."

At that point, other officers who were assisting with the conditions check searched Rasmussen's apartment. They notified Officer Mekash that they had found a small safe in the kitchen and used a key lying on the counter to open the safe. Officer Mekash proceeded to the safe and found 48 grams of methamphetamine, needles, two scales, glass pipes, small bags and other drug paraphernalia, and a debit card issued to

Rasmussen. Based on this discovery, Rasmussen was arrested and charged with first-degree controlled-substance crime and contempt of court.

Rasmussen moved to dismiss the charges and suppress evidence from the search. On February 6, 2014, the district court heard Rasmussen's motion to dismiss and suppress. The district court denied Rasmussen's motions to suppress and dismiss, finding that Rasmussen consented to the conditions of release and that his consent to the conditions validated the subsequent warrantless, suspicionless search of Rasmussen's apartment.

On June 30, 2014, the parties submitted the case on stipulated evidence under Minn. R. Crim. P. 26.01, subd. 4, to preserve the pretrial search issues for appeal. The district court found Rasmussen guilty on the first-degree controlled-substance charge and not guilty of contempt of court.

## DECISION

Rasmussen argues that the district court erred in denying his motion to suppress because the district court abused its discretion in setting the conditions of his pretrial release. "When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo.'" *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)). We review the district court's setting of bail and pretrial release conditions for an abuse of discretion. *See State v. Martin*, 743 N.W.2d 261, 265-66 (Minn. 2008) (analyzing pretrial release conditions for an abuse of discretion).

4

Rasmussen argues that the search condition was invalid because the district court failed to follow Minn. R. Crim. P. 6.02.  Before imposing conditions, the district court must "determine[] that release [without conditions] will endanger the public safety or will not reasonably assure the defendant's appearance."  Minn. R. Crim. P. 6.02, subd. 1. And, in setting pretrial release conditions, rule 6.02 states that the district court "must consider" a list of 13 factors.[1]  Minn. R. Crim. P. 6.02, subd. 2.  In sum, a district court cannot impose conditions of release "based on its standard practice"; rather, the district court must "consider[] the particular facts before it."  *Martin*, 743 N.W.2d at 267.

The transcript from Rasmussen's first appearance reveals the extent of the conditional-release discussion:

> THE COURT:  I will set the pretrial then for October 10, 2013, at 1:30.  Then we need to talk about conditions of release.
> . . . .
> [THE STATE]:  I would ask that standard conditions of release apply.  That he notify his attorney of his whereabouts, of his address, that he make all future court appearances. That he remain law abiding.  Because we do have an allegation here of a controlled substance crime, we would ask for the [c]ourt to impose a condition prohibiting the use or possession of any nonprescribed controlled substances including street drugs and nonprescribed medication.  No use or possession of alcohol and . . . a condition that Mr. Rasmussen be subject to random searches and spot testing to make sure that he is in compliance with those conditions.

---

[1] Those factors are:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) family ties; (4) employment; (5) financial resources; (6) character and mental condition; (7) length of residence in the community; (8) criminal convictions; (9) prior history of appearing in court; (10) prior flight to avoid prosecution; (11) the victim's safety; (12) any other person's safety; and (13) the community's safety. Minn. R. Crim. P. 6.02, subd. 2.

> THE COURT: Mr. [Defense Counsel].
> [DEFENSE COUNSEL]: Mr. Rasmussen has heard the request for conditions of release and they are acceptable to Mr. Rasmussen.
> THE COURT: All right. Mr. Rasmussen, I will release you on your own recognizance, but you are subject to these conditions. . . . You are subject to random testing and searches to make sure you comply [with the other conditions]. . . . And I will give you a copy of the order that I've just completed.

The district court abused its discretion in setting the conditions of Rasmussen's release. As an initial matter, there is no indication that the district court found the conditions necessary to protect public safety or ensure the defendant's appearance. *See* Minn. R. Crim. P. 6.02, subd. 1 (stating that before conditions can be imposed, the district court must find that conditionless release "will endanger the public safety or will not reasonably assure the defendant's appearance"). Furthermore, in using the presence of a controlled-substance crime as the basis for imposing conditions, the district court engaged in the very practice prohibited by *Martin* because "[s]uch a blanket policy is inconsistent with [r]ule 6.02." *See Martin*, 743 N.W.2d at 267. Additionally, there is no indication that the district court considered the factors listed in rule 6.02, subdivision 2, before setting the terms of Rasmussen's release. Although we are not requiring, as the state contends, "a specific incantation" in setting conditions of release, the district court should be mindful of what rule 6.02 requires, and that is a consideration of the 13 factors enumerated therein. *See* Minn. R. Crim. P. 6.02, subd. 2. Consequently, we find that the district court abused its discretion in setting the conditions of Rasmussen's release "based on its standard practice." *See Martin*, 743 N.W.2d at 257.

6

We make two additional observations. First, as an alternative to conditional release, the district court did not offer Rasmussen conditionless money bail as rule 6.02 requires. *See* Minn. R. Crim. P. 6.02, subd. 1 ("The [district] court must set money bail without other conditions on which the defendant may be released by posting cash or sureties."); *State v. McMains*, 634 N.W.2d 733, 735 (Minn. App. 2001) ("The district court erred in refusing to set monetary bail upon which appellant can obtain pretrial release without complying with nonmonetary conditions."). Second, we find problematic the district court's use of a preprinted conditional-release form. Use of such a form, especially one containing warrantless, suspicionless search conditions, makes it difficult to determine whether release conditions are being set based on the specific facts before the district court as *Martin* requires. *See* 743 N.W.2d at 267.

Rasmussen also argues that the condition allowing for warrantless, suspicionless searches of his apartment is unconstitutional. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980) (quotation marks omitted). And, even warrantless searches must "[o]rdinarily . . . be based upon probable cause to believe that a violation of the law has occurred." *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S. Ct. 733, 742 (1985) (quotation marks omitted). Because we have determined that the district court abused its discretion in setting the conditions of Rasmussen's release, we do not reach the Fourth Amendment issue of whether a warrantless search of a pretrial releasee's home is permissible, and if it is, what level of suspicion is necessary to justify a search.

7

We conclude that the district court abused its discretion in setting the conditions of Rasmussen's release, so the search of Rasmussen's home based on one of those conditions was invalid.  Therefore, the district court erred when it denied Rasmussen's motion to suppress the evidence obtained in that search.  *See In re Welfare of B.R.K.*, 658 N.W.2d 565, 578 (Minn. 2003). ("All evidence obtained by illegal searches is inadmissible in court and the fruits . . . must be suppressed.").

**Reversed and remanded.**